**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF TEXAS**

| | |
|---|---|
| YAZZAN QAWASMI, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>vs.<br><br>AMERICAN AIRLINES GROUP INC., ROBERT D. ISOM, DEVON E. MAY, and VASU S. RAJA,<br><br>Defendants. | Case No. 4:24-cv-00673-Y<br><br>CLASS ACTION<br><br>**MEMORANDUM OF LAW IN SUPPORT OF ROBERT FERRINO'S MOTION FOR CONSOLIDATION, APPOINTMENT AS LEAD PLAINTIFF AND APPROVAL OF HIS SELECTION OF LEAD COUNSEL**<br><br>JURY TRIAL DEMANDED |
| JOHN A. THORNBURG, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>vs.<br><br>AMERICAN AIRLINES GROUP INC., ROBERT D. ISOM JR., DEVON E. MAY, DAVID G. SEYMOUR, GANESH JAYARAM, COLE BROWN and VASU S. RAJA,<br><br>Defendants. | Case No. 4:24-cv-00823-O |

## I.   INTRODUCTION

Robert Ferrino respectfully submits this memorandum of law in support of his motion to: (i) consolidate the above-captioned related actions; (ii) appoint him as lead plaintiff in the above-referenced actions pursuant to Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§ 78j(b) and 78t(a), as amended by the PSLRA, 15 U.S.C. § 78u-4, and Securities and Exchange Commission ("SEC") Rule 10b-5 promulgated thereunder, 17 C.F.R. § 240.10b-5; and (iii) approve his selection of Kahn Swick & Foti, LLC ("KSF") as Lead Counsel and Holmes Firm PC as Liaison Counsel for the class. *See Mullins v. AZZ, Inc.*, 2018 U.S. Dist. LEXIS 222090, at *3-6 (N.D. Tex. 2018) (Means, J.) (appointing the "most adequate" movant as lead plaintiff and approving the movant's selection of lead counsel); *Shaffer v. Dig. Generation, Inc.*, 2013 U.S. Dist. LEXIS 204461, at *3-5 (N.D. Tex. 2013) (same).

## II.   PROCEDURAL BACKGROUND

The first securities lawsuit captioned *Qawasmi v. American Airlines Group Inc., et al.*, No. 4:24-cv-673 (N.D. Tex.) was filed in this District on July 18, 2024, and alleges violations of §§ 10(b) and 20(a) of the Exchange Act, 15 U.S.C. §§ 78j(b) and 78t(a), and Rule 10b-5, 17 C.F.R. § 240.10b-5 promulgated thereunder ("*Qawasmi* Action"). Subsequently, a related case captioned *Thornburg v. American Airlines Group Inc., et al.*, No. 4:24-cv-00823 (N.D. Tex.) ("*Thornburg* Action") was filed on August 28, 2024.[1]

These actions (the "Related Actions") allege violations of §§ 10(b) and 20(a) of the Exchange Act, 15 U.S.C. §§ 78j(b) and 78t(a), and Rule 10b-5, 17 C.F.R. § 240.10b-5 promulgated thereunder. The Related Actions also bring claims on behalf of persons and entities that purchased

---

[1]   All emphasis added and internal citations are omitted unless otherwise indicated. Capitalized terms have the same meaning as in the *Qawasmi* Complaint, unless otherwise stated.

American Airlines Group Inc. ("American Airlines," or the "Company") securities and name the same defendants: American Airlines, Robert D. Isom (American's CEO), Devon E. May (American's CFO), and Vasu S. Raja (the Company's Chief Commercial Officer during the class period). *Qawasmi* Compl., ¶¶ 1, 12-15; *Thornburg* Compl., ¶¶ 1, 6-12.[2] However, the *Qawasmi* Action alleges a class period of "between January 25, 2024 to May 28, 2024, inclusive" while the *Thornburg* Action alleges an extended class period of "between July 20, 2023 and May 28, 2024." *See Qawasmi* Compl. ¶ 1; *Thornburg* Compl., ¶ 1.

Notice of the *Qawasmi* Action was published in *GlobeNewswire* on July 18, 2024 informing investors who wished to serve as lead plaintiff that they must move the Court within sixty days of publication. Appendix 1-4 (hereinafter "APP xx"). Then on August 28, 2024, notice of the *Thornburg* Action was published in *Business Wire*. *See id.* at 5-7.

### III.    STATEMENT OF FACTS

American Airlines is a holding company which operates through its wholly owned subsidiaries as a network air carrier, providing scheduled air transportation services throughout the US and in various other countries around the world. *See Qawasmi* Compl. ¶ 20; *Thornburg* Compl.

---

[2]    Although the class definitions in the two complaints are functionally equivalent, they are not identical. *Cf. Qawasmi* Compl. ¶ 1 (defining the class as "all investors who purchased or otherwise acquired American securities between January 25, 2024 to May 28, 2024, inclusive") and *Thornburg* Compl. ¶ 1 (defining the class as "all purchasers of American Airlines common stock during the period between July 20, 2023 and May 28, 2024"). Furthermore, the *Thornburg* Complaint names three additional Defendants: David G. Seymour (the Company's Executive VP and COO); Ganesh Jayaram (the Company's Executive VP and Chief Digital Officer), and Cole Brown (the Company's Senior VP and Chief People Officer). *See Thornburg* Compl. ¶¶ 9-11.

For purposes of this Motion, Mr. Ferrino uses the longest pled Class Period. *See Town of Davie Police Pension Plan v. Pier 1 Imps., Inc.*, 2016 U.S. Dist. LEXIS 54627, at *6 (N.D. Tex. 2016) (explaining that "[n]umerous courts have favored using the longest-noticed class period for purposes of selecting a lead plaintiff[,] . . . because the longest, most inclusive class period encompasses more potential class members and increases potential damages.") (cleaned up).

¶ 6. American's common stock trades on the NASDAQ under the symbol "AAL." *Qawasmi* Compl. ¶ 12; *Thornburg* Compl. ¶ 17.

On July 20, 2023, American Airlines issued a press release announcing its second quarter 2023 financial results for the interim period ended June 30, 2023. *Thornburg* Compl. ¶ 26. The Company announced therein that it was "[r]aising full-year adjusted EPS2 guidance to between $3.00 and $3.75 per diluted share." *Id.* The release attributed the strong results to Defendants' business acumen and emphasized the Company's return to profitability post pandemic, quoting Defendant Isom stating in pertinent part that "[i]t was another fantastic quarter for American, driven by the hard work of our team to deliver a reliable operation for our customers and the continued strong demand for our product." *Id.*

The release further quoted him emphasizing that "[o]ur operation is performing at historically strong levels, and we have worked to refresh our fleet and build a comprehensive global network, all of which helped to produce record revenues in the second quarter," and adding that "We will build on this momentum the rest of the year and continue to prioritize reliability, profitability, accountability and strengthening our balance sheet." *Id.* The press release did not, however, disclose that American's apparent financial health was due to its elimination of discounts paid to corporate travel agents, slashing of sales staff, and efforts to compel customers to book through its website and mobile app. *Id.* at ¶ 24.

On October 19, 2023, before the opening of trading, American Airlines issued a press release announcing its third quarter 2023 financial results for the interim period ended September 30, 2023. *Id.* at ¶ 30. In addition to reporting that the Company had achieved "[r]ecord third-quarter revenue of approximately $13.5 billion," the release quoted Defendant Isom attributing the strong results to business acumen rather than changes to the strategic plan, stating in pertinent part that

3

"[t]he American Airlines team continues to produce strong results," and that its "team [was] delivering record-setting reliability and operational performance" and "executing on [its] plans and remain well-positioned for the future, supported by the strength of [its] network, [its] young and modern fleet, and [its] outstanding team." *Id.* Defendant Isom made similar statements during the conference call held with investors and stock analysts later that morning. *Id.* at ¶ 31.

On January 24, 2024, announcing its 4Q and full year results for 2023, American Airlines noted that some 80% of its bookings were now coming from internet customers, with 65% of those *via* its own in-house channels. *Id.* at ¶ 32. Then on January 25, 2024, Defendants held an earnings call, in which Defendant Isom stated: "Customers who shop directly with us have a more enjoyable experience and are 11 points more likely to recommend American than those shopping in traditional outlets. They are purchasing more valuable content and doing so at lower expense." *Qawasmi* Compl. ¶ 22. Defendant Raja similarly touted the purported success of the Company's strategy of moving toward requiring customers to book flights online through American's website and app. *Id.* at ¶ 24.

Defendants continue to tout the Company's changed sales strategy and reported increase in profitability throughout the remainder of the class period. On April 25, 2024, Defendants held an earnings call to report their results for the first quarter of fiscal year 2024 and to update their projections for the second quarter stating, in pertinent part: "We remain on track to deliver our full year EPS guidance, and we continue to expect to produce approximately $2 billion of free cash flow this year. . . . Engaging directly with our customers through modern Internet-based technology is where the industry is headed, and we're leading the way." *Qawasmi* Compl. ¶ 25.

The truth began to emerge on May 28, 2024 when, after the market closed, the Company announced Defendant Raja's termination and a significant reduction in American's projected

outlook for the second quarter. *Qawasmi* Compl. ¶ 29; *Thornburg* Compl. ¶ 38, 40. The Company also reported its first quarter 2024 financial results that day, disclosing that it had swung to a huge loss, despite having achieved record-breaking revenues. *Thornburg* Compl. ¶ 39. While much of that loss was attributed to operational issues, including those with Boeing, significant questions were also raised about the lack of growth in American Airlines' managed corporate travel market while direct competitors Delta and United had both reported a 14% increase in managed corporate booking in the first quarter. *Id.* On this news, the market price of American Airlines common stock plunged, falling nearly $2 per share, or more than 13%, on unusually high volume of approximately 159 million shares trading, or more than six times the average daily volume over the preceding ten days. *Qawasmi* Compl. ¶ 34; *Thornburg* Compl. ¶ 44. In the end, more than $1 billion in market capitalization simply vanished. *Id.*

## IV.   ARGUMENT

### A.   The Court Should Consolidate the Related Actions

Pursuant to the PSLRA, "[i]f more than one action on behalf of a class asserting substantially the same claim or claims arising under this title has been filed," courts shall not appoint a lead plaintiff until "after the decision on the motion to consolidate is rendered." 15 U.S.C. § 78u-4(a)(3)(B)(ii). A court has "broad discretion in determining whether to consolidate a case pending before it." *Alley v. Chrysler Credit Corp.*, 767 F.2d 138, 140 (5th Cir. 1985); *Bayati v. GWG Holdings, Inc.*, 2023 U.S. Dist. LEXIS 161080, at *7 (N.D. Tex. 2023) (quotations omitted). "Consolidation is particularly appropriate in the context of securities class actions if the complaints are based on the same public statements and reports." *Id.* at *8 (cleaned up).

The Related Actions bring claims on behalf of American Airlines investors for violations of Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 and Rule 10b-5 promulgated

thereunder. Class definitions are substantively identical, and both complaints name the same Defendants, though the *Thornburg* Complaint adds three Defendants. *Qawasmi* Compl. ¶¶ 1, 12-15; *Thornburg* Compl. ¶¶ 1, 6-12. The Related Actions make substantially similar allegations that Defendants made materially false and misleading statements concerning the Company's business operations during the class period. *Compare Qawasmi* Compl. ¶¶ 20-38 *with Thornburg* Compl., ¶¶ 22-46.

The only significant difference between the Related Actions is their proposed class periods, but this is not a substantial obstacle to consolidation. *Compare Qawasmi* Compl. ¶ 1 *with Thornburg* Compl. ¶ 1. This is because "[n]umerous courts have favored using the longest-noticed class period for purposes of selecting a lead plaintiff." *Town of Davie Police Pension Plan*, 2016 U.S. Dist. LEXIS 54627, at *6 (cleaned up). In such circumstances, "[i]t makes no sense to have two separate virtually identical class action lawsuits proceeding simultaneously." *Plymouth Cnty. Ret. Sys. v. Apache Corp.*, 566 F. Supp. 3d 712, 716 (S.D. Tex. 2021). Accordingly, this Court can and should consolidate the Related Actions.

### B. Mr. Ferrino Should Be Appointed Lead Plaintiff

The PSLRA establishes the procedure to appoint a lead plaintiff in a securities fraud class action. *See* 15 U.S.C. § 78u-4(a)(1)-(3)(B)(i). First, the plaintiff who files the initial action must publish a notice within 20 days of filing the action advising the class of their right to file a motion for appointment as lead plaintiff. *See Id.* § 78u-4(a)(3)(A)(i). Here, notice of the first-filed lawsuit in this matter was published on July 18, 2024 *via GlobeNewswire*. *See* APP 1-4. Next, within 60 days of publication, members of the proposed class are entitled to seek appointment as lead plaintiff. *Id.* § 78u-4(a)(3)(A)-(B). The Court then appoints as lead plaintiff the member of the class that is determined to be "most capable" of adequately representing the interest of class

members. *Id.* § 78u-4(a)(3)(B). In determining the "most adequate plaintiff," the PSLRA provides that:

> (i) [T]he court shall adopt a presumption that the most adequate plaintiff in any private action arising under this [Act] is the person or group of persons that –
>
> > (aa)   has either filed the complaint or made a motion in response to a notice . . .;
> >
> > (bb)   in the determination of the court, has the largest financial interest in the relief sought by the class; and
> >
> > (cc)   otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure.

*Id.* § 78u-4(a)(3)(B)(iii). Once the presumption attaches, it can only be overcome upon a showing of proof that the presumptive lead plaintiff will not fairly and adequately represent the class or is subject to unique defenses that will render the presumptive lead plaintiff incapable of doing so. *See Id.* § 78u-4(a)(3)(B)(iii)(II).

### 1.       Mr. Ferrino's Motion is Timely

The first-filed plaintiff published notice pursuant to the PSLRA on July 18, 2024 *via GlobeNewswire*. APP 1-4. *GlobeNewswire* is a widely circulated national business-oriented wire service which courts in this Circuit have found to satisfy the PSLRA's statutory notice requirements. *See Kakkar v. Bellicum Pharms., Inc.*, 2019 U.S. Dist. LEXIS 50704, at *4 (S.D. Tex. 2019). Mr. Ferrino's motion has been filed within 60 days of the notice and is therefore timely.

### 2.       Mr. Ferino Possesses the Largest Financial Interest in the Relief Sought by the Class

"The PSLRA does not delineate a procedure for determining the 'largest financial interest' among the proposed class members." *In re Enron Corp. Sec. Litig.*, 206 F.R.D. 427, 440 (S.D. Tex. 2002). Using criteria courts have developed to assess financial interest, Mr. Ferrino believes he has the largest financial interest in the relief sought by the putative class—a loss of approximately

$385,100—in connection with the 113,155 shares of American Airlines common stock he retained through the end of the Class Period. *See* APP 15-16; *AZZ*, 2018 U.S. Dist. LEXIS 222090, at *31; *see also In re Am. Serv. Grp., Inc.*, 2006 U.S. Dist. LEXIS 61779, at *12 (M.D. Tenn. 2006) (recognizing "some courts measure the 'largest financial interest' by a plaintiff's losses as a percentage of its assets or holdings"); *Laborers Loc. 1298 Pension Fund v. Campbell Soup Co.*, 2000 U.S. Dist. LEXIS 5481 (D.N.J. 2000) (same).

### 3.   Mr. Ferrino Satisfies Rule 23's Requirements

In addition to possessing the largest financial interest, the lead plaintiff must also "otherwise satisf[y] the requirements of Rule 23 of the Federal Rules of Civil Procedure." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(cc). With respect to the qualifications of lead plaintiffs, Rule 23(a) generally requires that their claims be typical of the claims of the class and that the representatives will fairly and adequately protect the interests of the class. *See* FED. R. CIV. P. 23. As detailed below, Mr. Ferrino satisfies these requirements.

The typicality requirement of Rule 23(a)(3) is satisfied "[i]f the [representative plaintiff's] claims arise from a similar course of conduct and share the same legal theory[.]" *AZZ*, 2018 U.S. Dist. LEXIS 222090, at *4. Mr. Ferrino's claims are typical of those of other putative class members. *Id.* at *4-5 (citing *Gluck v. CellStar Corp.*, 976 F. Supp. 542, 546 (N.D. Tex. 1997)). Like other putative class members, Mr. Ferrino: (i) purchased or otherwise acquired American Airlines securities during the class period; (ii) did so in reliance upon the allegedly materially false and misleading statements issued by Defendants; and (iii) suffered damages from purchasing artificially inflated securities and then suffered harm when the truth was revealed. *See* APP 9, 13.

A representative party must "fairly and adequately protect the interests of the class." FED. R. CIV. P. 23(a)(4); *See Azz*, 2018 U.S. Dist. LEXIS 222090, at *3. Mr. Ferrino's interests are

8

clearly aligned with the members of the class and there is no antagonism between his interests and those of other class members. Mr. Ferrino, a resident of Hammond, Indiana, has been investing in the stock market for approximately 25 years and has amply demonstrated his adequacy as a potential class representative by signing a sworn certification and declaration detailing his background and affirming his willingness to serve, and assume the fiduciary responsibilities of serving, as lead plaintiff. APP 8-10 (certification); APP 11-14 (Mr. Ferrino's Declaration at ¶¶ 2-10). In addition, Mr. Ferrino has selected counsel highly experienced in prosecuting securities class actions as proposed lead counsel. APP 17-58.

### C.      This Court Should Approve Mr. Ferrino's Choice of Lead Counsel

The PSLRA vests authority in the lead plaintiff to select and retain counsel to represent the class, subject to court approval. *See* 15 U.S.C. § 78u-4(a)(3)(B)(v); *Brown v. Bilek*, 401 F. App'x 889, 893 (5th Cir. 2010). Here, Mr. Ferrino has selected KSF as Lead Counsel for the class following his own independent assessment of the firm's qualifications. *See* APP 13. KSF is a national law firm with presences in Louisiana, California, and New York—courts have repeatedly found KSF well-qualified to serve as Lead Counsel in securities class actions such as this. *See* APP 17-58; *Bangzheng Chen v. CytRx Corp.*, 2014 U.S. Dist. LEXIS 194696, at *9 (C.D. Cal. 2014) ("Based on the firm's résumé and experience with class action securities litigation, the Court is satisfied that Kahn, Swick & Foti, LLC is qualified to serve as lead counsel in this case."); *Dougherty v. Esperion Therapeutics*, 2020 U.S. Dist. LEXIS 216515, at *22-23 (E.D. Mich. 2020) (approving KSF as class counsel); *Kasper v. AAC Holdings, Inc.*, 2017 U.S. Dist. LEXIS 109608, at *42-43 (M.D. Tenn. 2017) (same).

KSF also prevailed on behalf of the court-appointed lead plaintiff in *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988 (9th Cir. 2018), *cert. denied sub nom.* 139 S. Ct. 2615 (2019),

which significantly altered the federal securities pleading requirements and civil pleading practice generally in the Ninth Circuit. *See* APP 36. Further, KSF served as counsel to the lead plaintiff in the Halliburton securities litigation matter, where lead plaintiff twice prevailed before the United States Supreme Court and ultimately obtained a $100 million recovery for the class. *See Halliburton Co. v. Erica P. John Fund, Inc.*, 573 U.S. 258, 134 S. Ct. 2398 (2014); *Erica P. John Fund, Inc. v. Halliburton Co.*, 563 U.S. 804, 131 S. Ct. 2179 (2011). Thus, the Court may be assured that by granting this Motion, the members of the class will receive the highest caliber legal representation available from KSF. APP 31.

## V.   CONCLUSION

For the foregoing reasons, Robert Ferrino respectfully requests that the Court: (i) consolidate the Actions; (ii) appoint him as Lead Plaintiff; and (iii) approve his selection of KSF as Lead Counsel and Holmes Firm PC as Liaison Counsel for the class.

Dated: September 16, 2024

Respectfully submitted,

**HOLMES FIRM PC**

By:____*/s/ J.D. Reed*_____
John David "JD" Reed
Texas Bar No. 24075423
Holmes Firm PC
International Plaza III
14241 Dallas Parkway, Suite 800
Dallas, Texas 75254
Telephone: (469) 317-3424
Fax: (469) 916-7705
Jd@theholmesfirm.com

**KAHN SWICK & FOTI, LLP**
Ramzi Abadou
(to be admitted *pro hac vice*)
KAHN SWICK & FOTI, LLP
580 California Street, Suite 1200
San Francisco, California 94104
Telephone: (415) 459-6900

Facsimile: (504) 455-1498
ramzi.abadou@ksfcounsel.com

-and-

**KAHN SWICK & FOTI, LLC**
Lewis S. Kahn
(to be admitted *pro hac vice*)
James T. Fetter
(to be admitted *pro hac vice*)
Alexandra Pratt
(to be admitted *pro hac vice*)
1100 Poydras Street, Suite 960
New Orleans, Louisiana 70163
Telephone: (504) 455-1400
Facsimile: (504) 455-1498
lewis.kahn@ksfcounsel.com
james.fetter@ksfcounsel.com
alexandra.pratt@ksfcounsel.com

*Counsel for Movant, Robert Ferrino*

## CERTIFICATE OF SERVICE

I hereby certify that on September 16, 2024, a true and correct copy of the foregoing document was served by CM/ECF to the parties registered to the Court's CM/ECF system.

*/s/ J.D. Reed*
John David "JD" Reed

11