# EXHIBIT 2

2004 WL 1221353
Only the Westlaw citation is currently available.
United States District Court,
E.D. Pennsylvania.

In re AMERICAN BUSINESS FINANCIAL
SERVICES, INC. SECURITIES LITIGATION

No. Civ.A. 04–0265.
|
June 3, 2004.

**Attorneys and Law Firms**

[Richard A. Maniskas](), Schiffrin & Barroway, LLP, Bala Cynwyd, PA, for Plaintiff.

[Jill Baisinger](), [Karen Pieslak Pohlmann](), [Marc J. Sonnenfeld](), Morgan, Lewis & Bockius LLP, Philadelphia, PA, for Defendants.

*MEMORANDUM*

[ONEILL](), J.

**\*1** These consolidated actions brought against defendants American Business Financial Services, Inc. (ABFS), Anthony J. Santilli, Richard Kaufman and Albert W. Mandia have been filed on behalf of all persons who purchased or otherwise acquired ABFS' publicly traded securities during the Class Period. Plaintiffs allege that defendants made false and misleading statements concerning ABFS' earnings and seek to recover damages for violation of Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 (Exchange Act) and Rule 10b–5 promulgated thereunder.

Now before me are two competing motions for appointment of lead plaintiffs and approval of their selection of lead counsel pursuant to Section 21D(a)(3)(B) of the Exchange Act, as amended by the Private Securities Litigation Reform Act of 1995 (the PSLRA). The Engler Group, comprised of individual investors Edward Engler and Jandre LaFate, alleges it suffered approximately $69,660 in financial losses during the class period and proposes the appointment of Schiffrin & Barroway, LLP and Geller Rudman PLLC as lead counsel for the class. The Pension Funds, comprised of the Operative Plasterers' and Cement Masons' International Employees' Trust Fund and the Operative Plasterers' and Cement Masons' Local Union Officers' and Employees' Pension fund, allege they suffered losses of approximately $28,000 during the class period based on their purchase of approximately 5,000 shares of ABFS stock at a cost of over $61,000. The Pension Funds propose the appointment of Darren J. Robbins and Laura M. Andracchio of Lerach Coughlin Stoia & Robbins LLP as lead counsel and the Law Offices of Marc S. Henzel as liason counsel to the class. For the reasons stated below, I will grant the motion of the Engler Group for appointment as lead plaintiff and approval of their selection of Schiffrin & Barroway, LLP and Geller Rudman PLLC as lead counsel.

Under the PSLRA, courts "shall appoint as lead plaintiff the member or members of the purported plaintiff class that the court determines to be most capable of adequately representing the interests of class members." [15 U.S.C. § 78u–4(a)(3)(B)(i)](). "The purpose behind the PSLRA is to 'empower investors so that they, not their lawyers, control private securities litigation' by allowing the Court to ensure the transfer of 'primary control of private securities litigation from lawyers to investors.' ' *In re: [Party City Securities Litigation,]() 189 F.R.D. 91, 103 (D.N.J.1999)*, *quoting* [Chill v. Green Tree Fin. Corp.,]() 181 F.R.D. 398, 407 (D.Minn.1998) (further citations omitted).

> The court shall adopt a presumption that the most adequate plaintiff in any private action arising under this chapter is the person or group of persons that ... in the determination of the court, has the largest financial interest in the relief sought by the class and ... otherwise satisfies the requirements of [Rule 23 of the Federal Rules of Civil Procedure."]()

[15 U.S.C. § 78u–4(a)(3)(B)(iii)(I)](). The Engler Group is the presumptive lead plaintiff in this case. It has filed a motion to be appointed lead plaintiff, has the largest financial interest of all those bringing actions, and has made a prima facie showing that it can satisfy the typicality and adequacy requirements of [Rule 23](). [*In re Cendant Corp. Litig.,*]() 264 F.3d 201, 263 (3d Cir.2001), *cert denied* [525 U.S. 929 (2002)]() ("The initial inquiry ... should be confined to determining whether

the movant has made a *prima facie* showing of typicality and adequacy.").

 **\*2**  The Rule 23 typicality requirement requires that the injuries of the movant with the largest financial losses should not be markedly different from those of the other moving parties and that the movant's claims be based on the same legal issues as the claims of other class members. *See In re Cendant,* 264 F.3d at 265. The Engler Group alleges injuries and makes claims which are typical of other plaintiffs in the class. Like all other class members, they claim they were injured by purchasing or otherwise acquiring ABFS securities during the class period at prices allegedly inflated by defendant's allegedly materially false and misleading statements and/or omissions.

In assessing whether the movant satisfies Rule 23's adequacy requirement, courts should consider whether it "has the ability and incentive to represent the claims of the class vigorously, [whether it] has obtained adequate counsel, and [whether] there is [a] conflict between [the movant's] claims and those asserted on behalf of the class."

*Id., quoting Hassine v. Jeffes,* 846 F.2d 169, 179 (3d Cir.1988). With the largest financial interest in the outcome of the litigation, the Engler Group clearly has an incentive to represent the claims of the class with vigor. The Engler Group has also selected and retained competent and experienced counsel to represent themselves and the class and there is no apparent conflict between their claims and the claims asserted on behalf of the class.

The Pension Funds have not rebutted the presumption that the Engler Group is the most adequate plaintiff.

> Once the presumptively most adequate plaintiff is established, a member of the purported plaintiff class may rebut the presumption only upon proof that such plaintiff will not fairly and adequately protect the interests of the class or is subject to unique defenses that render such plaintiff incapable of adequately representing the class.

*In Re Cell Pathways, Inc. Sec. Litig. II,* 203 F.R.D. 189, 190 (E.D.Pa.2001), *citing* 15 U.S.C. § 78u–4(a)(3)(B)(iii)(II). The Pension Funds argue that although the Engler Group's claimed losses appear to be greater than their own the Engler Group cannot adequately represent the interests of the class as a sole lead plaintiff.

The Pension Funds argue that Congress' intention in enacting the PSLRA was to encourage courts to appoint as lead plaintiffs persons or entities "whose sophistication and interest in the litigation are sufficient to permit that person or entity to function as an active agent for the class...." *In re Cendant Corp. Litig.,* 264 F.3d 201, 266 (3d Cir.2001). They further argue that as institutional investors they are in the best position to prosecute securities fraud claims and to negotiate with and supervise counsel. However, while the aim of the PSLRA may have been "to encourage institutional investors to seek out a more active role in securities action lawsuits" in order to improve the quality of representation, thus benefitting shareholders and assisting courts," *In re Lucent Techs. Sec. Litig.,* 194 F.R.D. 137, 151 (D.N.J.2000), the language of the Act does not require that institutional investors take precedence over individual plaintiffs who are otherwise qualified to serve in a lead capacity. *See, e.g., Reiger v. Altris Software, Inc.,* 1998 U.S. Dist. LEXIS 14705, at \*14 (S.D.Cal. Sept. 11, 1998) ("If Congress had intended to restrict the application of the rebuttable presumption to institutional investors, it could have stated such in the statute.").

 **\*3**  [I]t may well be that the members of Congress, hoped that, with the help of the PSLRA, institutional investors would come to so dominate securities fraud class actions that they eventually would monopolize the lead plaintiff role. Regardless of the wisdom of such policy, however, that policy is not expressly stated in the PSLRA. Indeed, the PSLRA never mentions the term "institutional investor." ...

The institutional investor is not presumptively the most adequate plaintiff solely by virtue of its status as an institutional investor, however. If that were the case, Congress would have simply provided that institutional investors are presumptively the most adequate plaintiffs regardless of the size of financial loss and saved the Court from the need to engage in the very analysis it undertakes here. Instead, Congress chose to use the size of financial loss as the initial proxy for determining whether a particular plaintiff would be the "most adequate plaintiff."

*In re Telxon Corp. Sec. Litig.,* 67 F.Supp.2d 803, 820–22 (N.D.Ohio 1999) (citations omitted). Accordingly, where an individual investor or group of individual investors has suffered a larger financial loss than an institutional investor and has made a *prima facie* showing of typicality and adequacy, it is up to the institutional investor to rebut the presumption that the individual investor or group of individuals is the most adequate plaintiff.

Although the Pension Funds have established that they would be well equipped to serve as lead counsel, the question at this stage *"is not* whether another movant might do a better job of protecting the interests of the class than the presumptive lead plaintiff; instead, the question is whether anyone can prove that the presumptive lead plaintiff will not do a 'fair[ ] and adequate [ ]' job." *In re Cendant,* 264 F.3d at 268 (emphasis and omissions in original). The Pension Funds have not established that the Engler Group will not do a fair and adequate job of representing the interests of the class.

The Pension Funds argue that the Engler Group was unable to calculate accurately its financial interest in the case and improperly inflated the size of their loss by neglecting to account for stock dividends executed during the class period, and that this faulty calculation is evidence that the Engler Group is not sufficiently sophisticated to adequately represent the plaintiff class. They argue that the proceeds the Engler Group received from the additional shares they received as the result of two ten percent stock dividends executed by ABFS during the class period reduces their aggregated loss to $65,652 (still a larger loss than that of the Pension Funds). The Engler Group disputes the Pension Funds' allegation that its calculation was incorrect, arguing that the receipt of dividends should not be deducted from damages as dividends are treated as income under the federal tax regulations and payment of dividends is not related to whether stock shares were purchased or sold at artificially inflated prices. Neither the Engler Group nor the Pension Funds provide citations to case law or other support for their arguments as to whether dividends should be included or excluded in calculating losses or damages resulting from securities fraud. Beyond this one allegedly inaccurate calculation, the Pension Funds have presented no further evidence to rebut the presumption that the Engler Group will be able to adequately represent the class.

**\*4** The Pension Funds allege that the Engler Group was created by counsel, although they have produced no evidence

to support this allegation other than the absence of an explanation from the Engler Group of why it has moved as a group. If

> a court were to determine that the movant "group" with the largest losses had been created by the efforts of lawyers hoping to ensure their eventual appointment as lead counsel, it could well conclude, based on this history, that the members of that "group" could not be counted on to monitor counsel in a sufficient manner.

*In re Cendant,* 264 F.3d at 267, *citing In re Razorfish, Inc. Sec. Litig.,* 143 F.Supp.2d 304, 307–08 (S.D.N.Y.2001).

*See also In re Suprema Specialties, Inc.,* 206 F.Supp.2d 627, 637 (D.N.J.2002) (holding a group of individual investors "amalgamated together for the sole purpose of obtaining lead plaintiff status" did not meet the requirements of the PSLRA). Both Engler and LaFete have sufficiently large individual financial losses to qualify individually as the plaintiff with the largest financial interest, so it appears that the Engler Group was not "cobbled together by cooperating counsel for the obvious purpose of creating a large enough grouping of investors to qualify as 'lead plaintiff,' which can then select the equally artificial grouping of counsel as 'lead counsel." *In re Razorfish, Inc. Sec. Litig.,* 143 F.Supp.2d at 307–08. Although I may consider the history and extent of the relationship between the members of the Engler Group in my determination, the statute does not mandate "that the members of a proper group be 'related in some manner; it requires only that any such group 'fairly and adequately protect the interests of the class." ' *In re Cendant,* 264 F.3d at 266–67.

Although institutional investors may be better able to monitor the conduct of class counsel "because of their greater resources and higher levels of awareness gained from prior involvement in similar actions," *In re Lucent,* 194 F.R.D. at 152, the Pension Funds have not produced sufficient evidence to demonstrate that the individuals in the Engler Group, the proposed lead plaintiff with the largest financial loss, lack sufficient resources or experience to monitor the conduct of class counsel. "[T]o sustain a group of proposed lead plaintiffs, courts have established protocols

to [e]nsure that the group will be effective ... includ[ing] requiring declarations or affidavits to demonstrate that the proposed lead plaintiffs can work effectively as a group." *Smith,* 206 F.Supp.2d at 635. Engler and Lafete have submitted a declaration that they "agree to ... exercise joint decision-making and work together in this case to 'fairly and adequately protect the interests of the class." (Engler/ LaFete Decl. ¶ 4). Without additional evidence to show why Engler and Lafete could not work together to exercise joint-decisionmaking, the Pension Funds have not rebutted the presumption that the Engler Group is the most adequate plaintiff and I will appoint the Engler Group as lead plaintiff in this action.

 **\*5**  Under the PSLRA, "the most adequate lead plaintiff shall, subject to the approval of the court, select and retain counsel to represent the class." 15 U.S.C. § 78u–4(a)(3)(B)(v). Both the Conference Committee Report and the Senate Report establish "that the court should not interfere with lead plaintiff's choice of counsel, unless such intervention is necessary to 'protect the interest of the plaintiff class." ' *Janovici v. DVI, Inc.,* Fed. Sec. L. Rep. (CCH) P92, 2003 U.S. Dist. LEXIS 22315 at \*42 (E.D.Pa. Nov. 25, 2003), *quoting* *Smith v. Suprema Specialties, Inc.,* 206 F.Supp.2d 627, 641 (D.N.J.2002), *quoting* H.R. Conf. Rep. No. 104–369, at 35 (1995), reprinted in 1995 U.S.C.C.A.N. 730, 734; S.Rep. No. 104–98 at 11–12 (1995) reprinted in 1995 U.S.C.C.A.N. 679, 690). I do not find such intervention would be necessary here. [1]

[1]     Indeed, both Schiffrin & Barroway, one proposed lead counsel of the Engler Group, and Milberg Weiss Bershad Hynes & Lerach LLP, the former firm of the proposed lead counsel of the Pension Funds, have been praised by the courts for their conduct in class action lawsuits. *See, e.g., Henry v. Sears,* No. 98–4110, 1999 U.S. Dist. LEXIS 13831, at \*5–6 (N.D.Ill. Aug. 27, 1999) (stating that class counsel, which included the firm of Schiffrin, Craig & Barroway, exhibited professional skill and standing in abundance); *In re Rite Aid Corp. Sec. Litig.,* 269 F.Supp.2d 603, 611 (E.D.Pa.2003) (finding that it "would be hard to equal the skill [Milberg Weis] demonstrated" in representing the interests of the class). Lerach Coughlin Stoia & Robbins LLP was founded in May, 2004 and includes includes 51 partners formerly with the west coast operations of Milberg Weiss Bershad Hynes & Lerach LLP.

The Pension Funds object to the Engler Group's proposal to appoint two lead counsel to represent the plaintiff class. "[W]here more than one lead counsel is appointed, there is the potential they may ultimately seize control of the litigation, an occurrence the PSLRA intended to foreclose." *In re: Party City Secs. Litig.,* 189 F.R.D. 91, 115. The PSLRA does not, however, explicitly restrict the role of lead counsel to one law firm. *See, e.g., In re USEC Secs. Litig.,* 168 F.Supp.2d 560, 568 (D.Md.2001), *citing* *In re MicroStrategy, Inc. Secs. Litig.,* 110 F.Supp.2d 427, 440 (E.D.Va.2000). The crucial inquiry in determining whether co-lead counsel are appropriate is whether they "will enhance, rather than reduce, the efficiency of the litigation." *In re MicroStrategy,* 110 F.Supp.2d. at 440. Inasmuch as the PSLRA places restrictions on the payment of attorneys' fees and expenses, no increase in litigation costs will result from the appointment of two lead counsel. *See* 15 U.S.C. § 77z–1(a)(6). Because I am satisfied that the law firms of Schiffrin & Barroway, LLP and Geller Rudman PLLC can work together efficiently and without unnecessary duplication of services, I will approve them to serve as lead counsel in this matter.

*ORDER*

AND NOW, this day of May 2004, after considering the motion of plaintiffs Edward Engler and Jandre Lafate to be appointed lead plaintiffs and for approval of lead plaintiff's selection of lead counsel and the motion of plaintiffs Operative Plasterers' and Cement Masons' International Employees' Trust Fund and Operative Plasterers' and Cement Masons' Local Union Officers' and Employees' Pension Fund for appointment as lead plaintiff and for approval of lead plaintiff's selection of lead counsel and all responses thereto, it is hereby ORDERED as follows:

1. The motion of plaintiffs Edward Engler and Jandre Lafate (the Engler Group) for appointment as lead plaintiff, and for approval of lead plaintiff's selection of lead counsel is GRANTED.

2. The Engler Group's selection of Schiffrin & Barroway, LLP and Geller Rudman PLLC as lead counsel is approved.

 **\*6**  3. The motion of plaintiffs Operative Plasterers' and Cement Masons' International Employees' Trust

Case 4:24-cv-00673-O    Document 16-3    Filed 09/16/24    Page 6 of 6    PageID 472

Fund and Operative Plasterers' and Cement Masons' Local Union Officers' and Employees' Pension Fund for appointment as lead plaintiff and for approval of lead plaintiff's selection of lead counsel is DENIED.

**All Citations**

Not Reported in F.Supp.2d, 2004 WL 1221353

---

**End of Document**

© 2024 Thomson Reuters. No claim to original U.S. Government Works.

Case 4:24-cv-00673-O    Document 16-3    Filed 09/16/24    Page 6 of 6    PageID 472