# EXHIBIT 5

🚩 KeyCite Yellow Flag - Negative Treatment

Distinguished by Bluestone v. Sadove, E.D.Tenn., July 6, 2018

2003 WL 22849604
United States District Court,
E.D. Pennsylvania.

Jeff JANOVICI, Individually and On
Behalf of All Others Similarly Situated

v.

DVI, INC., et al.
Mark B. WILLIAMS, Individually and On
Behalf of All Others Similarly Situated

v.

Michael A. O'HANLON, et al.
Allison B. RICE, Individually and On
Behalf of All Others Similarly Situated

v.

Michael A. O'HANLON, et al.
Bharat PAREKH, Individually and On
Behalf of All Others Similarly Situated

v.

Michael A. O'HANLON, et al.
Stephen BENCE, IV, Individually and On
Behalf of All Others Similarly Situated

v.

Michael A. O'HANLON, et al.
Murari OJHA, Individually and On
Behalf of All Others Similarly Situated

v.

Michael A. O'HANLON, et al.
Kenneth GROSSMAN, Individually and
On Behalf of All Others Similarly Situated

v.

Michael A. O'HANLON, et al.
Shirley H. KAREL, Individually and On
Behalf of All Others Similarly Situated

v.

Michael A. O'HANLON, et al.

No. Civ.A.2:03CV04795–LD, Civ.A.2:03CV04963–
LD, Civ.A.2:03CV05000–LD, Civ.A.2:03CV05111–
LD, Civ.A.2:03CV05141–LD, Civ.A.2:03CV05244–
LD, Civ.A.2:03CV05336–LD, Civ.A.2:03CV05674–LD.
|

Filed Aug. 20, 2003.
|
Nov. 25, 2003.

**Attorneys and Law Firms**

represented by Marc A. Topaz, Schiffrin & Barroway, LLP, Bala Cynwyd, PA, Lead Attorney, Attorney to be Noticed, for Jeff Janovici, Individually and on Behalf of all Others Similarly Situated, Plaintiff.

represented by Gary M. Schildhorn, Adelman Lavine Gold & Levin, Philadelphia, PA, Lead Attorney, Attorney to be Noticed, for DVI, Inc., Defendant.

represented by Maura E. Fay, Dilworth Paxson LLP, Philadelphia, PA, Lead Attorney, Attorney to be Noticed, for Steven R. Garfinkel, Defendant.

represented by Andrew L. Barroway, Darren J. Check, Schiffrin & Barroway, LLP, Bala Cynwyd, PA, Lead Attorney, Attorney to be Noticed, Jeffrey M. Norton, Wechsler Harwood, LLP, New York, NY, Lead Attorney, Attorney to be Noticed, for Stephen Bence, IV, Movant.

represented by Deborah R. Gross, Law Offices Bernard M. Gross, PC, Philadelphia, PA, Lead Attorney, Attorney to be Noticed, Susan R. Gross, Law Offices Bernard Gross, PC, Philadelphia, PA, Lead Attorney, Attorney to be Noticed, for Milton Wolson, Movant.

represented by DeBorah R. Gross, Susan R. Gross, (See above for address), Lead Attorney, Attorney to be Noticed, for Bharat Parekh, Movant.

represented by Deborah R. Gross, Susan R. Gross, (See above for address), Lead Attorney, Attorney to be Noticed, for James Schwartz, Movant.

represented by Robert A. Kauffman, Berger and Montague, Philadelphia, PA, Lead Attorney, Attorney to be Noticed, for Gottlieb Family Foundation Trust, Movant.

represented by Robert A. Kauffman, (See above for address), Lead Attorney, Attorney to be Noticed, for Richard Morrell, Movant.

represented by M. Richard Komins, Barrack Rodos & Bacine, Philadelphia, PA, Lead Attorney, Attorney to be Noticed, for Thomas Sciba, Movant.

represented by Steven A. Schwartz, Chimicles & Tikellis LLP, Haverford, PA, Lead Attorney, Attorney to be Noticed, for Kenneth Grossman, Movant.

represented by Steven A. Schwartz, (See above for address), Lead Attorney, Attorney to be Noticed, for Cedar Street Funds, Movant.

represented by Steven A. Schwartz, (See above for address), Lead Attorney, Attorney to be Noticed, for Cedar Street Offshore Fund, Movant.

represented by Joanne G. Noble, Trujillo Rodriguez & Richards LLC, The Penthouse, Philadelphia, PA, Lead Attorney, Attorney to be Noticed, R. Bruce McNew, Taylor & McNew, Greenville, DE, Lead Attorney, Attorney to be Noticed, for Shirley H. Karel, Movant.

## MEMORANDUM

DAVIS, J.

**\*1** Presently pending before the Court are eight securities fraud class action lawsuits against Michael A. O'Hanlon ("O'Hanlon"), former Chief Executive Officer and President of DVI and a former member of its Board of Directors, and Steven R. Garfinkel [1] ("Garfinkel"), Chief Financial Officer and Executive Vice President of DVI [2] and a member of its Board of Directors, and the underwriter of its securities, Merrill Lynch & Co., Inc. ("Merrill Lynch"), who was, at all relevant times, DVI's financial advisor and the lead underwriter in managing DVI's securitizations. (Garfinkel and O'Hanlon are collectively identified as the "DVI Defendants"; O'Hanlon, Garfinkel and Merrill Lynch are collectively identified as "Defendants".) These eight actions (the "DVI Actions") allege claims under Section 21D(a)(3)(B) of the Securities Exchange Act of 1934 (the "Exchange Act"), as amended by the Private Securities Litigation Reform Act of 1995 (the "PSLRA"). Defendants are alleged to have violated Sections 10(b) and 20(a) of the Exchange Acts, and Rule 10b–5.

[1]     On August 13, 2003, DVI placed Garfinkel on administrative leave.

[2]     DVI is not named as a defendant in the instant action because it filed for Chapter 11 Bankruptcy protection on August 25, 2003

Numerous plaintiffs request consolidation the DVI Actions pursuant to Rule 42(a) of the Federal Rules of Civil Procedure. Multiple plaintiffs also petition to be appointed as Lead Plaintiff as well as for approval of their selection of Lead Counsel. On November 21, 2003, this Court held oral argument with respect to these motions. Based on the parties' submissions and the oral arguments presented to the Court, we grant the Cedar Street Group's Motion to Consolidate, appoint the Cedar Street Group as Lead Plaintiff, and approve Krislov & Associates, Ltd. to serve as Lead Counsel and Chimicles & Tikellis LLP to serve as Liaison Counsel.

## I. BACKGROUND

On July 25, 2003, James T. Bennett filed a class action on behalf of purchasers of DVI stock during the period of November 7, 2001 through June 27, 2003, against DVI (the "Bennett Complaint"), an independent specialty finance company for healthcare providers worldwide with $2.8 billions of managed assets, and O'Hanlon and Garfinkel. The Bennett Complaint alleged that DVI and the DVI Defendants violated Sections 10(b) and 20(a) of the Exchange Acts, and Rule 10b–5. Specifically, the Bennett Complaint alleged that DVI and the DVI Defendants participated in a fraudulent scheme and course of business that operated as a fraud or deceit on purchasers of DVI common stock by disseminating materially false and misleading statements and/or concealing material adverse facts. The Bennett Complaint alleged that the scheme did in fact: (i) deceive the investing public regarding DVI's business and operations and the intrinsic value of DVI securities; (ii) enable DVI to sell $25 million of its subordinated convertible notes during the class period; (iii) enable DVI to secure credit facilities for $175 million on favorable terms; and (iv) cause Bennett and other members of the Class to purchase DVI securities at artificially inflated prices. (Bennett Compl. ¶ 56). On August 26, 2003, the Bennett Complaint was voluntarily dismissed.

**\*2** On August 20, 2003, Jeff Janovici ("Janovici") filed a class action against DVI, O'Hanlon and Garfinkel (DVI, O'Hanlon and Garfinkel collectively identified as the "Janovici Defendants") on behalf of purchasers of DVI stock during the period of November 7, 2001 through June 27, 2003, alleging violations of Section 10(b) and 20(a) and the Exchange Action and Rule 10b–5 (the "Janovici Complaint"). [3] Specifically, the Janovici Complaint alleges that the Janovici Defendants participated in a fraudulent scheme and course of business that operated as a fraud or deceit on purchasers of DVI securities by disseminating

materially false and misleading statements and/or concealing material adverse facts. The scheme: (i) deceived the investing public regarding DVI's business and operations and the intrinsic value of DVI securities; (ii) enabled DVI to sell $25 million of its subordinated convertible notes during the class period; (iii) enabled DVI to secure credit facilities for $175 million on favorable terms; and (iv) caused plaintiff and members of the Class to purchase DVI securities at artificially inflated prices. (Janovici Compl. ¶ 14). On September 15, 2003, the Court entered an Order, pursuant to 🚩11 U.S.C. § 362, staying the Janovici action with respect to DVI because the company had filed for bankruptcy protection.

[3]    The law firm of Schiffrin & Barroway filed the Janovici Complaint on behalf on Mr. Janovici. Schiffrin & Barroway also filed the Bennett Complaint on behalf of Mr. Bennett.

On September 3, 2003, Mark B. Williams ("Williams") filed a class action against on behalf of purchasers of DVI common stock and Senior Notes during the period of November 7, 2001 through August 13, 2003 (the "Class Period"), [4] O'Hanlon and Garfinkel alleging violations of Sections 10(b) and 20(a) of the Exchange Acts, and Rule 10b–5 (the "Williams Complaint"). Specifically, the Williams Complaint alleges that the DVI Defendants: (i) employed devices, schemes, and artifices to defraud; (ii) made untrue statements of material fact and/or omitted material facts necessary to make the statements not misleading; and (iii) engaged in acts, practices, and a course of business which operated as a fraud and deceit upon the purchasers of the Company's securities in an effort to maintain artificially high market prices for DVI's securities. (Williams Compl. ¶ 73).

[4]    Three of the complaints define the class period as November 7, 2001 through June 27, 2003, and four of the complaints extend the class period through August 13, 2003. Because four of the complaints allege that false and/or materially misleading statements were made through August 13, 2003, we find that Class Period should be extended through that date.

One complaint, Civil Action No. 03–5674, however, defines the class period as September 1, 2001 through August 13, 2003. Because the complaint filed in this actions fails to allege that any false and/or materially misleading statements were made prior to November 7, 2001, we find that there is no basis for setting the Class Period prior to this date.

In accordance with the PSLRA, 15 U.S.C. § 78u–4(a)(3)(A)(I), Williams published a notice of pendency of the action in *Business Wire* on September 3, 2003. Since the filing of the Williams Complaint, six other complaints arising out of similar, if not identical, facts alleging parallel claims have been filed in the Eastern District of Pennsylvania. In addition to these six complaints, six plaintiff and/or plaintiff "groups" filed motions requesting: (i) consolidation of the actions; (ii) appointment as lead plaintiff; and (ii) approval of selection of lead counsel. [5]

[5]    The following plaintiffs filed complaints did not move for appointment as Lead Plaintiff: (I) Mark B. Williams, (ii) Jeff Janovici, (iii) Murari P. Ojha, and (iv) Allison B. Rice.

### A. The Movants

#### 1. Thomas Sciba

Mr. Sciba is an individual investor who allegedly suffered losses of approximately $30,000 as a result of purchasing DVI stock at prices inflated by the DVI Defendants' false and misleading statements. [6]

[6]    Mr. Sciba did not pursue appoint as Lead Plaintiff beyond the filing of his motion for appointment as lead plaintiff.

#### 2. Stephen Bence, IV

**\*3** Mr. Bence is an individual investor who allegedly suffered losses of nearly $60,000 as a result of purchasing DVI stock at prices inflated by the DVI Defendants' false and misleading statements.

#### 3. The Wolson Group

The Wolson Group is comprised of three individual investors, Milton Wolson, Bharat Parekh, and James Schwartz. The Wolson Group asserts losses of approximately $60,656.30.

#### 4. The Gottlieb/Morrell Group

The Gottlieb/Morrell Group is comprised of the Gottlieb Family Foundation Trust and individual investor Richard W. Morrell. The Gottlieb/Morrell Group claims to have suffered losses of approximately $46,000.

**5. The Cedar Street Group**

The Cedar Street Group is comprised of two institutional investors, the Cedar Street Fund and the Cedar Street Offshore Fund, and an individual investor, Kenneth Grossman. The Cedar Street Group alleges that it suffered losses in excess of $1.6 million as result of purchasing DVI securities at prices inflated by the DVI Defendants' false and misleading statements.

**6. The Karel Group**

The Karel Group is comprised of seven individual investors who allege a preexisting investment relationship. The Karel Group claims to have suffered losses of approximately $333,000.

## II. DISCUSSION

### A. Motions to Consolidate

A court has broad discretion to consolidate actions involving common questions of law or fact ... if it will facilitate the administration of justice." *See Smithkline Beecham Corp. v. Geneva Pharmaceuticals, Inc.,* 2001 WL1249694, at *5 (E.D.Pa. Sept. 26, 2001) (citing Fed.R.Civ.P. 42(a)). Rule 42(a) provides:

> When actions involving a common question of law or fact are pending before the court, it may order a joint hearing or trial of any of all the matters in issue in the actions; it may order all the actions consolidated; and it may make such orders concerning proceedings therein as may tend to avoid unnecessary costs or delay.

Fed.R.Civ.P. 42(a). "When considering consolidation the court 'must balance the benefits of judicial economy and expediting the litigation against the possibility of prejudice." ' *Smithkline Beecham,* 2001 WL1249694, at *5 (quoting *Kerley v. Great Lakes Dredge & Dock Co.,* 1996 WL 131136, at *1 (E.D.Pa. March 20, 1996)); *see also Rosario v. SCM Group USA, Inc.,* 2003 WL 21982116, at *1 (E.D.Pa. July 2, 2003) ("Consolidation is at the discretion of the trial court and "should be permitted where the consolidation of separate actions presenting common questions of law or fact will promote convenience and economy in judicial administration.") Moreover, the PSLRA directs that cases should be consolidated where there is "more than one action on behalf of a class asserting substantially the same claim or claims." 15 U.S.C. § 78u–4(a)(3)(B)(ii).

The actions at issue share significant common issues of law and fact. A review of each of the complaints reveals that each case involves claims against O'Hanlon and Garfinkel for violations of Rule 10b–5 and Sections 10(b) and 20(a) of the Exchange Act. Indeed, the factual basis supporting the claims asserted in the DVI Actions are parallel. The Plaintiffs are all investors who purchased common stock and/or Notes during the Class Period. Additionally, each Plaintiff, in purchasing shares of DVI stock, relied upon statements contained in the same public filings, press releases and other publications. Although the Cedar Group is unique in the claims asserted against Merrill Lynch, this difference is not determinative because the Cedar Group's claims against Merrill Lynch are premised on the same facts and statutory provisions as the claims against O'Hanlon and Garfinkel.

*See* Skwortz v. Crayfish Co., 2001 WL 1160745, at *2 (S.D.N.Y. Sept. 28, 2001) (granting consolidation of eleven complaints where each complaint was based on the same facts and statutory provision, despite the fact that all the complaints did not contain the same claims against the same defendants) (citations omitted). That the actions share common questions of law and fact and should be consolidation is further supported by the fact that each of the movants requested consolidation pursuant to Rule 42(a) and counsel for the moving plaintiffs expressly agreed on consolidation at oral argument. Because consolidation will facilitate the administration of justice and promote judicial economy without any foreseeable prejudice, the Motions to Consolidate filed by the Cedar Street Group in each of the DVI Actions are granted.

### B. Appointment of Lead Plaintiff

**\*4** The PSLRA instructs that, "as soon as practicable" after the resolution of the motions to consolidate, the Court shall appoint the most adequate plaintiff to serve as lead plaintiff of the class. 15 U.S.C. § 78u–4(a)(3)(B)(ii).

In 1995, in response to perceived abuses in securities fraud class actions, Congress enacted the PSLRA. *See* S.Rep. No. 104–98 (1995), *reprinted in* 1995 U.S.C.C.A.N. 679;

H.R. Conf. Rep. No. 104–369 (1995), *reprinted in* 1995 U.S.C.C.A.N. 730. "The purpose behind the PSLRA is to prevent 'lawyer-driven' litigation, and to ensure that 'parties with significant holdings in issues, whose interests are more strongly aligned with the class of shareholders, will participate in the litigation and exercise control over the selection and actions of plaintiffs' counsel." ' *Crayfish Co.,* 2001 WL 1160745, \*2 (citations omitted). "Congress believed that this could best be achieved by encouraging institutional investors to serve as lead plaintiffs. *Id.* (citations omitted). Accordingly, the PSLRA regulates the procedures for bringing class actions under the Securities Act.

The PSLRA requires plaintiffs filing private securities class action complaints to publish a notice of pendency of the suit in a widely circulated business publication or wire service no later than twenty days after the complaint is filed. 15 U.S.C. § 78u–4(a)(3)(A)(I). No later than sixty days after the publication of notice, any member of the purported class may file a motion to serve as lead plaintiff. 15 U.S.C. § 78u–4(a)(3)(A)(i)(II). If a motion for consolidation has been made, the court shall not appoint a lead plaintiff until after it renders a decision on the motion to consolidate. 15 U.S.C. § 78u–4(a)(3)(B)(ii).

The PSLRA instructs the court to "appoint as lead plaintiff the member or members of the purported plaintiff class that the court determines to be most capable of adequately representing the interests of the class members." 15 U.S.C. § 78u–4(a)(3)(B)(I). To this end, the statute creates a rebuttable presumption that the most adequate plaintiff is "the person or group of persons that—(aa) has either filed the complaint *or* made a motion in response to a notice ...; (bb) in the determination of the court, has the largest financial interests in the relief sought by the class; (cc) otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure." 15 U.S.C. § 78u–4(a)(3)(B)(iii)(II) (emphasis added). This presumption may only be rebutted by a member of the purported plaintiff class upon proof that the presumptively most adequate plaintiff—"(aa) will not fairly and adequately protect the interest of the class; or (bb) is subject to unique defenses that render such plaintiff incapable of adequately representing the class." 15 U.S.C. § 78u–4(a)(3)(B)(iii)(II); *see also* In re Cendant Corp. Lit., 264 F.3d 201, 266–8 (3d Cir.2001). The process of determining the "most adequate" plaintiff has been summarized by the Third Circuit: "The Reform Act establishes a two-step process for appointing a lead plaintiff: the court first identifies the

presumptive lead plaintiff, and then determines whether any member of the putative class had rebutted the presumption."
*In re Cendant Corp. Lit.,* 264 F.3d at 262 (citing 15 U.S.C. § 78u–4(a)(3)(B)(iii)(I) & (II)).

   1. Adequacy of Notice and Filing a Timely Complaint and/or Motion

**\*5** The PSLRA instructs that, within 20 days of filing a complaint under the statute, plaintiff or plaintiffs shall "cause to be published, in a widely circulated national business-oriented publication or wire service, a notice advising members of the purported plaintiff class ... (I) of pendency of the action, the claims asserted therein, and the purported class period; and (II) that not later than 60 days after the date on which the notice was published, any member of the purported class may move the court to serve as lead plaintiff of the purported class." 15 U.S.C. § 78u–4(a)(3)(A)(I). If more than one action on behalf of the class asserting substantially the same claims or claims is filed, only the plaintiff or plaintiffs in the "first filed action shall be required to cause notice to be published." 15 U.S.C. § 78u–4(a)(3)(A)(ii).

In deciding a motion for the appointment of lead plaintiff under the PSLRA, the Court has an independent duty to scrutinize the published notice and ensure that the notice comports with the objectives of the PSLRA, that is, encouraging the most adequate plaintiff, the plaintiff with the largest financial stake in the outcome of the litigation, to come forward and take control of the litigation. *See* *Ravens v. Iftikar,* 174 F.R.D. 651, 654–55 (N . D.Cal.1997) (quoting *House Conf. Rep. No. 104–369,* 104th Cong., 1st Sess., 1996 U.S.C.C.A.N. 730, 731); *see also* *Burke v. Ruttenberg,* 102 F.Supp.2d 1280, 1309 (N.D.Ala.2000) ("A district court must exercise exceptional care to insure [sic] that in applying the lead plaintiff provisions of the statute, the concerns that motivated Congress are carefully heeded, as the determination of lead plaintiff by the district court is, with probably little exception, not immediately subject to review."); *In re Oxford Health Plans, Inc. Securities Lit.,* 182 F.R.D. 42, 45 (S.D.N.Y.1998) ("The PSLRA calls for greater supervision by the Court in the selection of which plaintiffs will control the litigation."). This means that in order for a notice of pendency to encourage the most adequate plaintiff to come forward and control the litigation, it must contain accurate information from which an interested class member may contact the Court and readily obtain a copy of the complaint in a *pending* action and/or

file a motion to be appointed as lead counsel in that case.

See 🚩 *California Public Employees' Retirement System v. Chubb Corp.,* 127 F.Supp.2d 572, 576 (D.N.J.2001) (finding a notice inadequate where it failed to disclose the caption of the case, the docket number, the judge to whom the case was assigned, the vicinage in which the judge sits, or the address of the Court because "an interested class member would not even know to which courthouse to go to examine a copy of the complaint" or "would not know before which judge an appropriate motion should be filed."). Requiring the provision of such information comports with the objectives of the PSLRA by ensuring that "institutional plaintiffs with expertise in the securities markets and real financial interests in the integrity of the markets and outcome of the litigation would come forward and control the litigation, rather than the lawyers and their professional plaintiffs." 🚩 *Id.* at 576. Most significantly, providing information from which a interested class member may contact the Court and readily obtain a copy of the complaint in a *pending* action and/or file a motion to be appointed as lead counsel in that case shields against lawyer -driven litigation because such class members are not forced to contact noticing counsel for additional information to aid in their decision of whether to move for lead plaintiff status.

**\*6** On July 25, 2003, the Bennett action was filed by the law firm of Schriffrin & Barroway. On July 31, 2003, within 20 days of filing his complaint, Mr. Bennett caused a notice to be published noticing the pendency of the Bennett action. On August 20, 2003, Schriffrin & Barroway filed a substantially similar action on behalf of Mr. Janovici. On August 26, 2003, the Bennett action was voluntarily dismissed. On September 3, 2003, three notices of pendency were published in three different business-oriented publications and wire services. Two of the notices, one published by Schiffrin & Barroway in *PrimeZone Media Network,* and the other, published by the law firm of Caully Geller Bowman & Rudman, LLP in *PR Newswire,* noticed the pendency of the Bennett action despite the fact that the Bennett action had not been "pending" for over one week. Both of these notices stated that September 29, 2003 was the moving deadline. The third notice published on September 3, 2003 by the law firm of Milberg Weiss Bershad Hynes & Lerach LLP in *Business Wire,* noticed the pendency of the Williams action, which was filed that very day. The Williams notice stated that November 3, 2003 was the moving deadline.

In the instant action, we find that the Janovici action was the first filed action in the DVI litigation because the Bennett was voluntarily dismissed prior to the consolidation. Consequently, for purposes of the PSLRA notice requirements, we find that the Bennett notice has no effect. More significantly, we find that the Mr. Janovici failed to comply with the notice requirements of the PSLRA because he did not notice the pendency of the Janovici action, which notice is required by the plain language of the PSLRA. Indeed, the September 3, 2003 notices filed by Schiffrin & Barroway and Caully Geller incorrectly noticed the pendency of the Bennett action, which notice was clearly inaccurate because the Bennett action was, in fact, no longer pending. Purported class members could not have relied on either of these notices for sufficient information from which they could contact the Court and readily obtain a copy of the complaint for an action filed on behalf of DVI securities holders on July 25, 2003 because no such complaint existed. Additionally, purported class members could not have filed a motion for appointment as lead plaintiff in an action that was no longer pending. We find that such misinformation in a notice of pendency does not encourage the most adequate plaintiff to come forward and take control of the litigation; therefore, it contravenes the very purpose of the PSLRA.

If the Janovici action had been properly noticed on September 3, 2003, that is, if it had noticed the pendency of the Janovici action rather than the Bennett action, the PSLRA would have required that such notice inform purported class members that they may move the Court "not later than 60 days after the date on which the notice was published" to be appointed as lead plaintiff. Sixty days from September 3, 2003 was November 3, 2003. Because the plain language of the PSLRA requires that purported class members be given 60 days from the publication date of the notice of pendency in the first filed action, we hold that November 3, 2003 was the moving deadline, as the Williams notice accurately informs the class.

**\*7** After an independent review of the Williams notice, we find that it otherwise complies notice complies with the requirements of the PSLRA. The Williams notice states:

The law firm of Milberg Weiss Bershad Hynes & Lerach LLP announces that a class action lawsuit was filed on September 3, 2003, on behalf of purchasers of the securities of DVI, Inc ("DVI" or the "Company") (OTC: DVIX. PK) between November 7, 2001 and August 13, 2003, inclusive (the "Class Period"), seeking to pursue remedies under the Securities Exchange Act of 1934 (the "Exchange Act"). A copy of the complaint filed in this action in available from the Court, or can be viewed on Milberg Weiss' website at: *http:// www.milberg.com/cases/dvi/.*

The action is pending in the United States District Court for the Eastern District of Pennsylvania, against Defendants Michael A. O'Hanlon, former President and Chief Executive Officer and Director of DVI, and Steven R. Garfinkel, DVI's former Chief Financial Officer.

The Complaint alleges that defendants violated Section 10(b) and 20(a) of the Securities Exchange Act of 1934, and Rule 10–b–5 promulgated thereunder, by issuing a series of material misrepresentations to the market between November 7, 2001 and August 12, 2003. According to the complaint, throughout the Class Period, Defendants engaged in a fraudulent scheme to deceive the public as to DVI's true financial condition. Defendants allegedly issued positive statements regarding DVI's business and operations, and overall growth in publicly disseminated press releases and SEC filings and claimed that they were a fair presentation of DVI business. According to the complaint, Defendants failed to disclose material adverse facts, including, but not limited to, the Company's failure to write down the value of certain impaired assets; its failure to properly account for and report non-recurring transactions; its failure to adopt adequate internal control; and its material overstatement of its assets and earnings. As a result of Defendants' fraudulent scheme, DVI stock became artificially inflated during the Class Period, trading as high as $20.99 per share on June 17, 2002, thereby causing damages to Class Period purchasers of DVI securities.

On August 13, 2003, after the market closed, Defendants issued a press release revealing DVI's intention to file for Chapter 11 Bankruptcy protection and that the Company had not yet secured debtor-in-possession financing. The Company blamed its dire situation on the "recent discovery of apparent improprieties in its prior dealings with lenders involving misrepresentations as to the amount and nature of collateral pledged to lenders." In the same release, Defendants announced that DVI's Chief Financial Officer, Defendant Steven Garfinkel, had been placed on administrative leave. This revelation came after Defendants announced that DVI's auditor, Deloitte & Touche LLP, had resigned over a dispute concerning the Company's accounting for certain transactions; that the Company had depleted all availability on its credit facilities; that DVI failed to make interest payments on it 9 7/8 percent Senior Notes due to severe liquidity constraints; and that the SEC had rejected the Company's filing of its quarterly report for the third quarter of 2003.

Immediately following the [sic] the New York Stock Exchange suspended trading of DVI stock and Senior Notes, pending delisting. On the same day, DVI stock closed at $0.30 per share, representing a one-day decline of 62.50 percent.

 **\*8** If you bought the securities of DVI between November 7, 2001 and August 13, 2003 and sustained damages, you may, no later than November 3, 2003, request that the Court appoint you as lead plaintiff. According to the Exchange Act, a notice must be published within 20 days after the date on which the first complaint is filed. A notice was previously published in connection with a related action against the same Defendants. That action was withdrawn and consequently the notice filed in connection with that action has no effect. Rather, the deadline for the filing of a motion for appointment as lead plaintiff is, as stated herein, on November 3, 2003, sixty days from the publication date of this notice. A lead plaintiff is a representative party that acts on behalf of other class members in directing the litigation. In order to be appointed lead plaintiff, the Court must determine that the class member's claim is typical of the claims of other class members, and that the class member will adequately represent the class. Under certain circumstances, one or more class members may together serve as "lead plaintiff." Your ability to share in any recovery is not, however, affected by the decision whether or not to serve as lead plaintiff. You may retain Milberg Weiss Bershad Hynes & Lerach LLP, or other counsel of your choice, to serve as your counsel in this action.

Milberg Weiss Bershad Hynes & Lerach LLP (*http://www.milberg.com)* is a 190–lawyer firm with offices in New York City, San Diego, San Francisco, Los Angeles, Boca Raton, Philadelphia and Seattle, and is active in major litigations pending in federal and state courts throughout the United States. Milberg Weiss has taken a leading role in many important actions on behalf of defrauded investors, consumers, and others, and has been responsible for more than $20 billion in aggregate recoveries. Please contact Milberg Weiss [sic] website for more information about the firm. If you wish to discuss this action with us, or have any questions concerning this notice or your rights and interests with regard to the case, please contact the following attorneys....

Unlike the first three notices, the Williams notice lists the names of the defendants, providing purported class members with sufficient information from which they could contact the

Court and obtain a copy of the complaint and/or file a motion for appointment as lead plaintiff. Moreover, the Williams notice advises the purported DVI Class of the pendency of the action, the claims asserted, and the purported Class Period. Significantly, the Williams notice advises the purported DVI Class that a member may move to serve as lead plaintiff, explains the significance of a lead plaintiff, and specifies the date by which such a motion must be filed—November 3, 2003. The Williams notice also advises that potential class members may retain counsel of their choice. For the above-stated reasons, the Williams notice satisfies the notice requirements of the PSLRA.

### 2. The Most Adequate Plaintiff

 **\*9**  The PSLRA instructs the Court to appoint the presumptively "most adequate" plaintiff to serve as lead plaintiff. The presumptive "most adequate" plaintiff for the DVI Class is the plaintiff that satisfies the each of following: (1) has either filed a complaint *or* made a motion in response to a notice, (2) in the determination of the court, has the largest financial interests in the relief sought by the class, and (3) otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure." 15 U.S.C. § 78u–4(a)(3)(B)(iii)(II). For the reasons that follow, the Court finds that the Cedar Street Group is the most adequate plaintiff and appoints the Cedar Street Group to serve as lead plaintiff for the Class in the DVI Action.

First, pursuant to the PSLRA statutory framework, the "most adequate" plaintiff must have either filed a complaint in the consolidated actions or timely moved for appointment as lead plaintiff. *See* 15 U.S.C. § 78u–4(a)(3)(B)(iii)(II)(aa); *see also In re Cephalon Securities Lit.,* 1998 WL 4700160, at \*5 (E .D. Pa. Aug. 12, 1998)*In re Cephalon Securities Lit.,* 1998 WL 4700160, at \*5 (E .D. Pa. Aug. 12, 1998) (appointing as lead plaintiff an individual who, although he did not move for appointment, was a named plaintiff in one of the consolidated class action complaints); *In re Initial Public Offering Securities Lit.,* 214 F.R.D. 117, 120 n. 4 (S.D.N.Y.2002) (finding that where numerous complaints have been consolidated, the filing of any of the initially consolidated actions will suffice for purposes of the lead plaintiff selection because the PSLRA specifically instructs courts to rule on consolidation prior to approving lead plaintiff). A motion for appointment of lead plaintiff is timely when filed "not later than 60 days after the date on which the notice is published." 15 U.S.C. § 78u–4(a)(3)(A)(i)(II).

Generally the 60 day expiration period begins to run from the publication date on which the first notice of pendency was filed. *See* 15 U.S.C. § 78u–4(a)(3)(A)(ii) ("If more than one action on behalf of a class asserting substantially the same claim or claims arising under this chapter is filed, only the plaintiff or plaintiff in the first filed action shall be required to cause notice to be published ...") This rule does not apply, however, where the first notice of pendency fails to provide adequate information pursuant to the terms of the PSLRAthe statutory 60 day period beings to run from the date of the first notice that complies with the PSLRA. *See In re Lucent Technologies, Inc. Securities Lit.,* 221 F.Supp.2d 463, 466 (D.N.J.2001) (calculating the 60 day period for filing a motion to be appointed as lead plaintiff pursuant to the PSLRA from the date of publication of the second notice of pendency where the first notice of pendency did not contain adequate information). Additionally, where multiple notices are published informing class members of the pendency of litigation and the notices contain conflicting information regarding the expiration of the 60 day period, it would be inconsistent with basic notions of fairness and the purposes of the notification provisions of the PSLRA to mechanically enforce a strict time limit with respect to the 60 day expiration period. *See Steiner v. Frankino,* 1998 LEXIS 21804, at \*13 (N.D.Ohio July 16, 1998) (recognizing that it would be improper to enforce a strict time limit with respect to the 60 day expiration period where the publication of multiple notices could appear to expand the time period in the eyes of class members); *see also Schulman v. Lumenis, Ltd.,* 2003 WL 21415287, at \*4 (S.D.N.Y. June 18, 2003) (noting that courts have taken different approaches with respect to motions filed after the 60 day period has expired and citing to *Steiner v. Frankino* for this proposition).

 **\*10**  In the instant action, any plaintiff who either (a) filed a complaint in these consolidated actions, or (b) moved to be appointed lead plaintiff not later than November 3, 2003 satisfies the first requirement of the "most adequate" plaintiff test. With respect to motion for appointment as lead plaintiff, we hold that November 3, 2003, not September 29, 2003, was the expiration date for the 60 day period to move for several reasons. First, as previously noted, the first notice of pendency to comply with the requirements of the PSLRA stated that November 3, 2003 was the moving deadline. Additionally, eleven notices were published with three containing the November 3, 2003 deadline and two providing no specific deadline at all. Indeed, counsel for the Gottlieb/Morrell Group published two notices, one stating that September 29, 2003

was the moving deadline, and the other stating that November 3, 2003 was the moving deadline. More significantly, the second of the two Gottlieb/Morrell notices explicitly stated that the September 29, 2003 deadline was no longer effective: "A notice was previously published in connection with a related action against the same Defendants. That action was withdrawn and consequently the notice filed in connection with that action has no effect. Rather, the deadline for the filing of a motion for appointment as lead plaintiff is, as stated herein, on November 3, 2003." Based on a review of the notices in the DVI Action, the Court holds that, indeed, under these particular circumstances, multiple notices with differing deadlines certainly could have created confusion among potential class members with respect to the moving deadline. The potential for such confusion in the case further supports our conclusion that, under these circumstances, setting November 3, 2003 as moving deadline furthers the objectives of the PSLRA.

In the instant action, each of the movants meets the first requirement of the "most adequate" plaintiff test because they either filed an initially-filed complaint in the consolidated action or timely moved for appointment as lead plaintiff.

### 2. The Plaintiff with the Largest Financial Interest

The PSLRA instructs that the "most adequate," or lead plaintiff have the largest financial interest in the relief sought. 15 U.S.C. § 78u–4(a)(3)(B)(iii)(II)(2).

#### a. Thomas Sciba

Mr. Sciba is an individual investor who allegedly suffered losses of approximately $30,000 as a result of purchasing DVI stock at prices inflated by the DVI Defendants' false and misleading statements. At the time Mr. Sciba moved for appointment as lead plaintiff, he believed he had the largest financial interest in the relief sought by the DVI Class. Contrary to Mr. Sciba's belief, his financial interest is subordinate to the interests of others in the DVI Class. Therefore, Mr. Sciba is not the presumptive "most adequate" plaintiff.

#### b. Stephen Bence, IV

Mr. Bence is an individual investor who allegedly suffered losses of nearly $60,000 as a result of purchasing DVI stock at prices inflated by the DVI Defendants' false and misleading statements. Mr. Bence asserts that he is the movant with the largest individual financial stake in this litigation and therefore is the presumptive lead plaintiff. Contrary to Mr. Bence's assertion, he does not have the largest individual financial stake in this litigation. Therefore, Mr. Bence is not the presumptive "most adequate" plaintiff.

#### c. The Wolson Group

**\*11** The Wolson Group is comprised of three individual investors, Milton Wolson, Bharat Parekh, and James Schwartz. The Wolson Group alleges it has the largest financial interest of any movant that timely applied to the Court to be a lead plaintiff in accordance with the provisions of the PSLRA. Specifically, the Wolson Group claims to have suffered losses of approximately $60,656.30. Indeed, the Wolson Group is not the movant with the largest financial interest that timely applied to the Court to be a lead plaintiff in accordance with the provisions of the PSLRA. Therefore, the Wolson Group is not the presumptive "most adequate" plaintiff.

#### d. The Gottlieb/Morrell Group

The Gottlieb/Morrell Group is comprised of the Gottlieb Family Foundation Trust and individual investor Richard W. Morrell. Upon information and belief, the Gottlieb/Morrell Group alleges that, of all the movants, they have the largest financial interest in this matter, claiming losses of approximately $46,000. Moreover, the Gottlieb/Morrell Group claims to be the only timely movant in compliance with the PSLRA's certification requirements to have sustained losses in both DVI's common stock and notes. Contrarily, the Gottlieb/Morrell Group neither suffered the largest financial losses in this matter nor is the only timely movant in compliance with the PSLRA's certification requirements to have sustained losses in both DVI's common stock and notes. Therefore, the Gottlieb/Morrell Group is not the presumptive "most adequate" plaintiff.

#### e. The Cedar Street Group

The Cedar Street Group is comprised of two institutional investors, the Cedar Street Fund and the Cedar Street Offshore Fund, and an individual investor, Kenneth Grossman. The Cedar Street Group alleges that it suffered losses in excess of $1.6 million as result of purchasing DVI securities at prices inflated by the DVI Defendants' false and misleading statements. It follows then, that in the instant DVI Action the Cedar Street Group clearly has the largest financial interest in the relief sought. Indeed, none of the other movants dispute this fact and, as discussed below, the Karel Group expressly

concedes this point. Accordingly, it is the Cedar Street Group that satisfies the second requirement of the "most adequate" plaintiff test.

### f. The Karel Group

The Karel Group is comprised of seven individual investors who allege a preexisting investment relationship. The Karel Group acknowledges that the losses of the Cedar Group surpass those of Plaintiff Karel individually and the Karel Group in the aggregate, and that the Cedar Street Group should be named a lead plaintiff. Accordingly, the Karel Group requests that the Court consider appointing the Karel Group as co-lead plaintiff and counsel for the Karel Group as co-lead counsel with counsel for the Cedar Street Group. The Karel Group argues that its appointment as co-lead plaintiff would benefit the class because it would represent the unique perspective of individual investors. Although the Karel Group acknowledges that the Cedar Street Group also includes an individual investor, Kenneth Grossman, the Karel Group suggests that Mr. Grossman's position as a 50% shareholder of the General Partner of the Cedar Street Fund may undermine his capacity to represent the 'unique perspective' of the individual investor. The Karel Group, however, provides no support for this conclusory allegation. As the Karel Group concedes, it is not the presumptive "most adequate" plaintiff.

### 3. Adequately Represent the Interests of the Class

**\*12** In addition to having the largest financial interest in the relief sought, the presumptive "most adequate" plaintiff must also "otherwise satisf [y] the requirements of Rule 23 of the Federal Rules of Civil Procedure." 15 U.S.C. § 78u–4(a)(3)(B). Rule 23(a) provides that a party may serve as class representative if:

> (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

Rule 23(a) is "otherwise" satisfied if the movant "makes a *prima facie* showing that it satisfies the typicality and adequacy requirements." *Smith v. Suprema Specialties, 206 F.Supp.2d 627, 632 (D.N.J.2001)* (citing *Hoxworth v. Blinder, Robinson & Co., 980 F.2d 912, 924 (3d Cir.1992))*

The typicality requirement is satisfied if the plaintiff, as a result of the same course of conduct, suffered the same injuries as the absent class members, and their claims are based on the same legal issues. *See Weiss v. York Hosp., 745 F.2d 786, 809 n. 36 (3d Cir.1984).* That the claims of the class representative be typical of claims of the class does not require that they be identical. *See Gen. Tel. Co. Of the Southwest v. Falcon,* 247 U.S. 147, 155 (1982).

The "fairly and adequately" representing the class requirement is satisfied "when both the class representative and its attorneys are capable of satisfying their obligations, and neither has interests conflicting with those of other class members." *Suprema Specialties,* 206 F.Supp.2d at 633 (citations omitted). The Third Circuit explained, that when assessing this requirement, courts should consider whether the proposed lead plaintiff "has the ability and incentive to represent the claims of the class vigorously, [whether it] has obtained adequate counsel, and [whether] there is [a] conflict between [the movant's] claims and those asserted on behalf of the class." *In re Cendant Corp. Litig .,* 264 F.3d at 265 (quoting *Hassine v. Jeffes,* 846 F.2d 169, 179 (3d Cir.1988)).

The Cedar Street Group satisfies both the typicality and adequacy requirements of Rule 23(a). The Cedar Street Group represents the interests of the purchasers of both DVI common stock and DVI 9.875% Senior Notes. The Cedar Street Group's interests are typical because they, as a result of the same course of conduct, suffered the same injuries as the absent class members, and their claims are based on the same legal issues. Specifically, the Cedar Street Group: (a) acquired DVI common stock and 9.875% Senior Notes during the Class Period; (b) at market prices allegedly artificially inflated as a result of the Defendants' false and/or misleading statements; (c) which statements were in violation of federal securities laws; and (d) suffered damages thereby. Additionally, the Cedar Street Group adequately represents the interests of the Class because: (a) its interests are clearly aligned with purchasers of both common stock and 9.875%

Senior Notes; (b) it is comprised of both individual and institutional investors; and (c) there is no evidence of their interests conflicting with those of the other class members. Moreover, we find that the Cedar Group's selected counsel are capable of satisfying their obligations; evidence of conflict with the interests of other class members is lacking. Thus, the Cedar Street Group satisfies the last requirement of the presumptive "most adequate" plaintiff test.

### 4. Presumption Not Rebutted

**\*13** The presumption of the "most adequate" plaintiff, however, "may be rebutted only upon proof by a member of the purported plaintiff class that the presumptive most adequate plaintiff—(aa) will not fairly and adequately protect the interests of the class; or (bb) is subject to unique defenses that render such plaintiff incapable of adequately representing the class." 15 U.S.C. § 78u–4(a)(3)(B)(iii)(II).

Although some of the movants suggest that it is *possible* that the Cedar Street Group *may* not be able to adequately represent the interest of the Class, such speculation is insufficient to overcome the presumption under the PSLRA. No member of the purported plaintiff Class has submitted proof or demonstrated a reasonable basis for finding that the Cedar Street Group will not fairly and adequately protect the interest of the Class, or that it is subject to unique defenses which render it incapable of adequately representing the Class. Therefore, we find that the presumption has not been rebutted and that the Cedar Street Group remains the presumptive "most adequate" plaintiff.

Additionally, the Court finds that the interests of the Class would not be enhanced by appointing the Karel Group as co-lead plaintiff. The Karel Group has not demonstrated the necessity or efficacy to the Class' benefit for such designation as co-lead plaintiff. The Cedar Street Group is comprised of individual and institutional investors and contains holders of both DVI common stock and Senior Notes. Moreover, there is no conflict of interest that prevents the Cedar Street Group from representing the interests of the Karel Group or the rest of the Class. Thus, we conclude that the Cedar Street Group alone will fairly and adequately represent the interests of the Class.

### III. Approval of Selection of Lead Counsel
Under the PSLRA, "[t]he most adequate lead plaintiff shall, subject to the approval of the court, select and retain

counsel to represent the class." *Suprema Specialties,* 206 F.Supp.2d at 641 (quoting § 78u–4(a)(3)(B)(v)). The Third Circuit has commented on this issue: "We stress, however, that the question at this stage is not whether the court would 'approve' that movant's choice of counsel or the terms of its retainer agreement or whether another movant may have chosen better lawyers or negotiated a better fee agreement; rather, the question is whether the choices made by the movant with the largest losses are so deficient as to demonstrate that it will not fairly and adequately represent the interests of the class, thus disqualifying it from serving as lead plaintiff at all." *In re Cendant Corp. Lit.,* 264 F.3d at 266. Stated differently, once the presumption is triggered, the question is "not whether another movant might do a better job of protecting the interests of the class than the presumptive lead plaintiff; instead, the question is whether anyone can prove that the presumptive lead plaintiff will not do a 'fair and adequate' job" *Id.* at 268. Indeed, the Conference Committee Report and the Senate Report "indicate that the court should not interfere with lead plaintiff's choice of counsel, unless such intervention is necessary to 'protect the interest of the plaintiff class." ' *Suprema Specialties, Inc.,* 206 F.Supp.2d at 641 (quoting H.R. Conf. Rep. No. 104–369, at 35 (1995), *reprinted in* 1995 U.S.C.C.A.N. 730, 734; S.Rep. No. 104–98 at 11–12 (1995) *reprinted in* 1995 U.S.C.C.A.N. 679, 690).

**\*14** The Court does not find such intervention necessary to "protect the plaintiff class." Therefore, Krislov & Associates, Ltd. is approved to serve as Lead Counsel and Chimicles & Tikellis LLP is approved to serve as Liaison Counsel. [7]

[7]   To the extent that the Karel Group submitted a request for the appointment of its counsel as co-lead counsel regardless of the Karel Group being appointed as co-lead plaintiff, such request is also denied.

### CONCLUSION

For the foregoing reasons, the Court grants Cedar Street Group's Motion to Consolidate, appoints the Cedar Street Group as Lead Plaintiff, and approves Krislov & Associates, Ltd. to serve as Lead Counsel and Chimicles & Tikellis LLP to serve as Liaison Counsel. An appropriate order follows.

Case 4:24-cv-00673-O    Document 16-6    Filed 09/16/24    Page 13 of 13    PageID 499

**All Citations**

Not Reported in F.Supp.2d, 2003 WL 22849604, Fed. Sec. L.
Rep. P 92,636

---

**End of Document**                           © 2024 Thomson Reuters. No claim to original U.S. Government Works.