# EXHIBIT 6

Lax v. First Merchants Acceptance Corp., Not Reported in F.Supp. (1997)

Case 4:24-cv-00673-O    Document 16-7    Filed 09/16/24    Page 2 of 10    PageID 501

🚩 KeyCite Yellow Flag - Negative Treatment

Declined to Follow by   Burke v. Ruttenberg,   N.D.Ala.,   April 7, 2000

1997 WL 461036

Only the Westlaw citation is currently available.

United States District Court, N.D. Illinois.

Harry LAX, on behalf of himself and
all others similarly situated, Plaintiff,

v.

FIRST MERCHANTS ACCEPTANCE
CORPORATION, et al., Defendants.

Milton CASTILLO, Jr. and Chris VINES, Plaintiffs,

v.

Mitchell C. KAHN, Thomas R. EHMANN, and FIRST
MERCHANTS ACCEPTANCE CORP., Defendants.

Samuel ZUCKER, Plaintiff,

v.

FIRST MERCHANTS ACCEPTANCE
CORP., and Mitchell C. KAHN, Defendants.

Jared HERSHKOWITZ, on behalf of himself
and all others similarly situated, Plaintiff,

v.

Mitchell C. KAHN, Thomas EHMANN,
Paul VAN EYL, and FIRST MERCHANTS
ACCEPTANCE CORP., Defendants.

Robert MILLER, on behalf of himself
and all others similarly situated, Plaintiff,

v.

FIRST MERCHANTS ACCEPTANCE CORP.,
Mitchell C. KAHN, Thomas EHMANN, Paul
VAN EYL, Marcy H. SHOCKEY, Solomon A.
WEISGAL; and Stowe W. WYANT, Defendants.

SANDERS FAMILY PARTNERS Plaintiff,

v.

FIRST MERCHANTS ACCEPTANCE
CORP., Mitchell C. KAHN, Thomas
EHMANN, and Paul VAN EYL, Defendants.

Howard HERTZBERG, Plaintiff,

v.

FIRST MERCHANTS ACCEPTANCE
CORP., Mitchell C. KAHN, Thomas
EHMANN, and Paul VAN EYL, Defendants.

Sami and Suzanna SAWDAYE, on behalf of
themselves and all others similarly situated, Plaintiffs,

v.

FIRST MERCHANTS ACCEPTANCE
CORP., et al., Defendants.

James L. KATZ, Andrew GRIFFIN, PROFIT
SHARING PLAN, KATZ MANAGEMENT PROFIT
SHARING PLAN for the Benefit of Abe KATZ, Abe
KATZ Custodian for Tracy KATZ, EVANSTON
RADIOLOGISTS PROFIT SHARING PLAN for
the Benefit of David ROCHESTER, EGGENER
FAMILY LIVING TRUST, Richard EGGENER
Custodian for Brian EGGENER, Paul DUNCAN,
and Mary Tyler GANON, Individually, and On
Behalf of All Others Similarly Situated, Plaintiffs,

v.

FIRST MERCHANTS ACCEPTANCE
CORP., Mitchell C. KAHN, Thomas
EHMANN, and Paul VAN EYL, Defendants.

Leo HIRSCH, Trustee of the Goldenberg
& Hirsch Profit Sharing Plan, Plaintiff,

v.

FIRST MERCHANTS ACCEPTANCE
CORP., Mitchell C. KAHN, Thomas
EHMANN, and Paul VAN EYL, Defendants.

Robert GOLDSTEIN, Plaintiff,

v.

FIRST MERCHANTS ACCEPTANCE
CORP., Mitchell C. KAHN, Thomas
EHMANN, and Paul VAN EYL, Defendants.

Marvin and Patsy JACOBS, et al., on behalf of
themselves and all others similarly situated, Plaintiffs,

v.

FIRST MERCHANTS ACCEPTANCE
CORP., et al., Defendants.

Jeff GRUBBA, on behalf of himself and
all others similarly situated, Plaintiffs,

v.

FIRST MERCHANTS ACCEPTANCE
CORP., et al., Defendants.

No. 97 C 2715, 97 C 2716, 97 C 2737, 97 C 2791,
97 C 3767, 97 C 4237, 97 C 4013, 97 C 4236.

|

Aug. 11, 1997.

Lax v. First Merchants Acceptance Corp., Not Reported in F.Supp. (1997)

Case 4:24-cv-00673-O    Document 16-7    Filed 09/16/24    Page 3 of 10    PageID 502

**MEMORANDUM OPINION AND ORDER**

COAR, District Judge.

 **\*1**  Before the court are three motions for appointment of lead plaintiff and approval of selection of lead counsel pursuant to § 21D(a)(3)(B) of the Securities Exchange Act of 1934 and/or § 27D(a)(3)(B) of the Securities Act of 1933.

**I. Facts**

First Merchants Acceptance Corporation ("First Merchants" or "Company") is a Delaware corporation with its principal place of business in Deerfield, Illinois. The Company purchases retail installment loan contracts on automobiles. On April 16, 1997, First Merchants announced that it would restate its 1996 financial results and delay reporting its first quarter 1997 results because it had found "irregularities involving unauthorized entries in the Company's financial records." (Lax Compl., ¶ 2). After this announcement, First Merchants' stock price fell to $2.75 per share. To appreciate the magnitude of the fall in price, note, for example, that on April 19, 1996, the shares traded at $26.375 per share. To date, First Merchants has not admitted that the accounting irregularities affected any period other than 1996 and the first quarter of 1997.

All of the instant actions were filed following the April 16, 1997 announcement. The first complaint filed was that by plaintiff Lax. Lax's counsel published a notice of the pendency of that complaint through *Business Wire,* in compliance with § 21D(a)(3(A)(I) of the 1934 Act. [1] After the Lax Notice was published, other plaintiffs filed related securities class action complaints alleging similar facts. To date, at least thirteen such complaints have been filed in this district. Some of those complaints alleged class periods different (either shorter or longer) than that alleged in the Lax Complaint. Until June 12, 1997, the earliest date for the beginning of any class period alleged in a "First Merchants" complaint was January 25, 1996. Notices were filed informing investors that actions had been filed that began the class period on that date. (*See, e.g.,* Finkel Aff., Exh. D (notice published April 28, 1997 in *PRNewswire* )). All of these notices apparently informed potential class members that they had until sixty days from the date of the filing of the

*Lax* complaint to file a motion to be named as lead plaintiff (*See id.*).

[1]     In relevant part, the notice stated as follows:

[O]n April 18, 1997, a class action lawsuit was filed ... on behalf of all persons who purchased or otherwise acquired the common stock of First Merchants Acceptance Corp. ("First Merchants" or the "Company") between April 18, 1996 and April 16, 1997, inclusive (the "Class Period").

The complaint charges First Merchants and certain officers and directors of the Company during the relevant time period with violations of Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 by, among other things, issuing to the investing public false and misleading financial statements and press releases concerning First Merchants' income and earnings....

....

If you are a member of the class described above, you may, not later than sixty days from today, move the Court to serve as lead plaintiff of the class, if you so choose....

(Gardy Aff., Exh. B; Schulman Aff., Exh. B).

On June 12, 1997, however, two class actions were filed that assert that the class period began on September 23, 1994, at least sixteen months prior to the beginning of any other alleged class period. *See **Jacobs, et al. v. First Merchants Acceptance Corp., et al.,*** No. 97 C 4236 and ***Grubba v. First Merchants Acceptance Corp., et al.,*** No. 97 C 4237. The September 23, 1994 date apparently corresponds to the date on which First Merchants stock was first publicly traded. The ***Jacobs*** and ***Grubba*** complaints also assert claims not found in any of the other complaints. For example, the ***Jacobs*** and ***Grubba*** complaints name the accounting firm of Deloitte & Touche as a defendant. The complaints also assert claims arising under the Securities Act of 1933 and claims for negligence, violation of the Illinois Consumer Fraud and Deceptive Business Practices Act, common law fraud, and negligent misrepresentation.

 **\*2**  Despite the differences between the complaints, this court made findings of relatedness on April 29, May 28, June 6, and June 20, 1997; subsequently, all of the "First Merchants" cases in the district were reassigned to this judge's calendar. Presently before the court are motions by two groups plaintiffs/potential class members to be appointed lead

Lax v. First Merchants Acceptance Corp., Not Reported in F.Supp. (1997)

Case 4:24-cv-00673-O    Document 16-7    Filed 09/16/24    Page 4 of 10    PageID 503

plaintiff, as well as a motion by a third group of plaintiffs to be appointed lead plaintiff for purchasers of First Merchants notes.

## II. Discussion

### A. The Private Securities Litigation Reform Act of 1995

The issues before the court arise under the Private Securities Litigation Reform Act of 1995 (PSLRA), Pub.L. No. 104–67, which amended the Securities Act of 1933, 🚩15 U.S.C. § 77a–77bbbb, and the Securities Exchange Act of 1934, 🚩15 U.S.C. § 78a–🚩78lll. The PSLRA applies to private class actions, such as this one, brought pursuant to the Federal Rules of Civil Procedure. *See* 15 U.S.C. § 77z–1(a)(1). As noted in *Fischler v. Amsouth Bancorporation,* No. 96–1567–Civ–T–17A, 🚩1997 WL 118429 (M.D.Fla. Feb.6, 1997), Congress enacted the PSLRA in response to perceived abuses of the class action procedure. *Id.* at *1 (citing H.Conf.Rep. No. 104–369, at 31 (1996)). "The manifest intent of the [PSLRA] is determining the plaintiff most capable of pursuing the action and representing the interests of the class." *Id.* at *2 (citing H.Conf.Rep. No. 104–369, at 34)).

The PSLRA amended the Securities Exchange Act of 1934 by adding § 21D, to be codified at 15 U.S.C. § 78u–4.[2] Section 21D(a)(3) now sets forth procedures for early notice to potential class members of the filing of the class action. 15 U.S.C.A. § 78u–4(a)(3). Under those provisions, the named plaintiff in the action must file notice within twenty days of filing suit to inform potential class members of their right to move to be appointed lead plaintiff. 15 U.S.C.A. § 78u–4(a)(3)(A)(i). Such notice must be published "in a widely circulated national business-oriented publication or wire service." 15 U.S.C.A. § 78u–4(a)(3)(A)(i).

[2]  While the complaints in this litigation assert claims under both the 1933 and 1934 acts, the bulk of the claims arise under the 1934 act. The court will therefore cite to its provisions in determining lead plaintiff in this litigation. In any event, the lead-plaintiff provisions of the 1933 and 1934 acts are identical.

The PSLRA also altered the procedure by which the court appoints lead plaintiff for the purported class. Section 21D(a)(3)(B)(i) provides:

Not later than 90 days after the date on which a notice is published ... the court shall consider any motion made by a purported class member in response to the notice, including any motion by a class member who is not individually named as a plaintiff in the complaint or complaints, and shall appoint as lead plaintiff the member or members of the purported plaintiff class that the court determines to be most capable of adequately representing the interests of the class members....

15 U.S.C.A. § 78u–4(a)(3)(B)(i). The PSLRA creates a rebuttable presumption that the most adequate plaintiff is that person who "has either filed the complaint or made a motion in response to a notice [published pursuant to 15 U.S.C.A. § 78u–4(a)(3)(A)(i) ]," "has the largest financial interest in the relief sought," and "otherwise satisfies the requirements of Rule 23." 15 U.S.C.A. § 78u–4(a)(3)(B)(iii)(I)(aa), (bb), & (cc). Any member of the purported plaintiff class may rebut the presumption upon proof "that the presumptively most adequate plaintiff ... will not fairly and adequately protect the interests of the class ... [or] is subject to unique defenses that render such plaintiff incapable of adequately representing the class." 15 U.S.C.A. § 78 u–4(a)(3)(B)(iii)(II)(aa) & (bb). A purported class member may undertake discovery to mount such a challenge only if she "first demonstrates a reasonable basis for finding that the presumptively most adequate plaintiff is incapable of adequately representing the class." 15 U.S.C.A. § 78u–4(a)(3)(B)(iv).

**\*3** Once the court has appointed lead plaintiff, the PSLRA provides that the lead plaintiff "shall, subject to the approval of the court, select and retain lead counsel." 15 U.S.C.A. § 78u–4(a)(3)(B)(v).

### B. Jacobs/Lax Group and Castillo Group Motions

Under the provisions outlined above, the "Jacobs/Lax Group" is presumptively the most adequate lead plaintiff.[3] This is by virtue of the fact that the Jacobs/Lax Group has timely moved this court to be appointed as lead plaintiff, has the largest financial interest in the relief sought, and otherwise appears to meet the adequacy and typicality requirements of Rule 23.

Lax v. First Merchants Acceptance Corp., Not Reported in F.Supp. (1997)

Case 4:24-cv-00673-O    Document 16-7    Filed 09/16/24    Page 5 of 10    PageID 504

However, the "Castillo Group" contests this presumption. [4] First, the Castillo Group argues that the Jacobs/Lax Group has not complied with the notice requirements of § 21D(a)(3)(A). Specifically, the Castillo Group contends that the Jacobs/Lax Group "failed to inform investors that it extended the Class Period to 1994 and also failed to describe the claims asserted in its cases." (Castillo Mem. in Opp. to Lax/Jacobs Motion, at 3) Second, even if § 21D's notice provisions have been satisfied, the Castillo Group contends that the Jacobs/Lax Group cannot adequately represent the purported class. The court will discuss these arguments in turn.

[3]     The Jacobs/Lax Group is comprised of the named plaintiffs in *Jacobs, et al. v. First Merchants Acceptance Corp., et al.,* No. 97 C 4236; *Lax v. First Merchants Acceptance Corp., et al.,* No. 97 C 2715; *Katz, et al. v. First Merchants Acceptance Corp., et al.,* No. 97 C 3738; and *Grubba v. First Merchants Acceptance Corp., et al.,* No. 97 C 4237, as well as certain other class members that have not yet filed complaints.

[4]     The Castillo Group, referred to as the "Abbey Group" by the Jacobs/Lax Group, consists of the plaintiffs in *Castillo, et al. v. Kahn, et al.,* No. 97 C 2716; *Zucker v. First Merchants Acceptance Corp., et al.,* No. 97 C 2737; *Miller v. First Merchants Acceptance Corp., et al.,* No. 97 C 2836; *Sanders Family Partners v. First Merchants Acceptance Corp ., et al.,* No. 97 C 2981; *Hertzberg v. First Merchants Acceptance Corp., et al.,* No. 97 C 2984; *Hirsch v. First Merchants Acceptance Corp., et al.,* No. 97 C 3767; *Goldstein v. First Merchants Acceptance Corp., et al.,* No. 97 C 4013; and *Hershkowitz v. First Merchants Acceptance Corp., et al.,* No. 97 C 2791, as well as fifty-nine other class members who have not filed complaints, but who support the Castillo Group's motion.

1. Notice

The Castillo Group initially contended that no notice regarding the expanded class period (i.e., September 23, 1994 to April 16, 1997) had been published. This contention was clearly incorrect. On June 14–16, 1997, a notice was published in *Investor's Business Daily,* which stated as follows:

> On June 12, 1997 class actions were filed ... against First Merchants Acceptance Corporation, certain of its former officers and directors and its auditor on behalf of all persons who purchased First Merchants' common stock between September 23, 1994 and April 16, 1997 (the "Class Period"). The Complaint charges that during the Class Period, defendants violated Sections 10(b) and 20(a) of the Securities Exchange Act of 1934, and Section 11 of the Securities Act of 1933 by making false and misleading statements and SEC filings concerning First Merchants' income and earnings. Similar actions have been previously filed. If you are a class member and wish to be appointed lead plaintiff you must move the court to be appointed not later than sixty days from April 18, 1997....

(Jacob/Lax Reply Mem. in Support of Motion, Exh. A).

While the Castillo Group's now admits that its initial contention was incorrect, it nevertheless argues that the notice that was published was inadequate because it does not comply with the strictures of § 21D. The Castillo Group's arguments in this regard are unavailing.

Section 21D(a)(3)(A)(i)(II) provides that the published notice should instruct potential class members "that, *not later than 60 days after the date on which the notice is published,* any member of the purported class may move the court to serve as lead plaintiff of the purported class." 15 U.S.C.A. § 78u–4(a)(3)(A)(i)(II) (emphasis added). The notice published in *Investor's Business Daily* clearly does not comply with this language, because it instructs potential class members that they must file a motion to serve as lead plaintiff within sixty days of April 18, 1997, and not within sixty days of the date of the notice (i.e., June 14, 1997). The court finds this deficiency to be immaterial, for several reasons.

 **\*4**  At the outset, it is doubtful whether § 21D requires publication of notice of the extended class period in the

Lax v. First Merchants Acceptance Corp., Not Reported in F.Supp. (1997)

Case 4:24-cv-00673-O    Document 16-7    Filed 09/16/24    Page 6 of 10    PageID 505

*Jacobs* and *Grubba* complaints. Section 21D(a)(3)(A)(ii) provides

> [i]f more than one action on behalf of a class asserting substantially the same claim or claims arising under this chapter is filed, *only the plaintiff or plaintiffs in the first filed action shall be required to cause notice to be published in accordance with clause (i).*

15 U.S.C.A. § 78u–4(a)(3)(A)(ii) (emphasis added). In this case, the court has already made a finding of relatedness between the *Jacobs* and *Grubba* actions and the complaints alleging shorter class periods and has ordered the reassignment of all the cases to this judge's calendar. [5] This finding was based on the fact that the complaints were based on substantially the same claims, despite the fact that they alleged different class periods. [6] The fact that a later-filed complaint alleges a different class period would not bring that complaint out of the aegis of § 21D(a)(3)(A)(ii). That section refers only to *claims* and not to class periods. If a later action asserts substantially the same claims, no new notice is required. In this case, *Jacobs* and *Grubba* do assert substantially the same claims as the other actions, namely, those based on the Securities Exchange Act of 1934. While the *Jacobs* and *Grubba* complaints also name Deloitte & Touche as a defendant and assert additional statutory and common law claims, such claims do not render the *Jacobs* and *Grubba* actions dissimilar to the other actions under § 21D(a)(3)(A)(ii).

[5]    Local Rule 2.31 provides for reassignment of a case to the calendar of another judge of the district if that case is found to be "related" to an earlier-numbered case assigned to that judge. The rule defines relatedness as follows:

> Two or more cases may be related if one or more of the following conditions is or are met:
> (1) the cases involve the same property;
> (2) the cases involve the same issues of fact or law;
> (3) the cases grow out of the same transaction or occurrence;

> (4) in class action suits, one or more of the classes involved in the cases is or are of [sic] the same....

[6]    None of the Castillo Group plaintiffs opposed the relatedness motions. In the words of the court in *Chan, et al. v. Orthologic Corp., et al.,* No. CIV 96–1514 (D.Ariz. Dec. 17, 1996) (Broomfield, J.) (attached as exhibit to Jacobs/Lax Mem. in Opp. to Abbey Motion), the Castillo Group's "concerns regarding the different class periods did not cause the [ [Castillo Group plaintiffs] the same concern at the [ [relatedness] stage as they evidently do now."

Beyond the fact that notice is not required in this case, the court finds that requiring published notices for complaints that merely expand the class period to inform class members that they may move to be appointed lead counsel within sixty days of the *date of that published notice* would be inconsistent with the purposes of the PSLRA. Instead of ensuring that lead plaintiffs are appointed as quickly as possible after the filing of the first class action complaint, enforcement of such a rule would mean that the lead plaintiff could not be appointed until sixty days after the publication of the *last* notice related to that securities litigation. In some cases, appointment of lead counsel could be delayed indefinitely if new complaints alleging earlier starting dates for the class period were filed. Such a result would clearly thwart the intent of the PSLRA, which was meant to have lead plaintiffs appointed as soon as practicable. [7]

[7]    The Castillo Group's contention that the date given in the *Investor's Business Daily* notice for class members to file lead-plaintiff motions is improper is also somewhat disingenuous. At least one of the notices in the Castillo Group adopted the same convention of setting the date for filing of lead-plaintiff motions as sixty days from the date on which the first notice (ie., the Lax Notice) was published. (*See* Finkel Aff., Exh. D (notice dated April 28, 1997 that informed potential class members that they had until sixty days from April 18, 1997 to file lead-plaintiff motions). In fact, what is not in dispute in this case is that potential class members had only until June 17, 1997 to file motions to be named lead plaintiff at this time. It would be incongruous if class members who believe that their claims date back to stock purchases as early as September 1994, but whose class period encompasses that alleged by other

Lax v. First Merchants Acceptance Corp., Not Reported in F.Supp. (1997)

Case 4:24-cv-00673-O    Document 16-7    Filed 09/16/24    Page 7 of 10    PageID 506

plaintiffs, could not move to be lead plaintiff. Under the Castillo Group's reasoning, such class members would have until 60 days from the date of filing of the notice extending the class period to September 1994 to move to be lead plaintiff of that class period. In the meantime, however, the court would have presumably ruled on previous lead-plaintiff motions for class periods subsumed by the extended class period.

> Nor is the court concerned that the notice regarding the extended class period was published only days before the filing deadline for lead-plaintiff motions. The PSLRA does not envisage that *all* potential class members will receive notice of the right to be lead plaintiff. If this were the case, the PSLRA would have provided for an individual-notice requirement, rather than a published-notice requirement. The PSLRA's notice provision, then, is clearly intended to reach sophisticated investors. In this case, investors were first notified of First Merchants' wrongdoing and of the initiation of the *Lax* class action in mid-April 1997. Presumably, this prompted some of those investors to file their own complaints and perhaps ultimately led to the filing of the *Jacobs* and *Grubba* actions. The court is satisfied that the PSLRA's intent to inform potential class members of their right to move for lead-plaintiff status has been not been undermined.

The Castillo Group's second objection to the June 14–16 *Investor's Business Daily* notice is that it was not published in "a widely circulated business-oriented publication or wire service," as required by § 21D(a)(3)(A). The court rejects this contention. The PSLRA does not define "widely circulated." Thus, the court must make its own interpretation as to what the term means. In this case, the court finds that, while *Investor's Business Daily* might not have as large a circulation as the *Wall Street Journal,* it is nevertheless widely circulated and, more importantly, apparently read by sophisticated investors. The likelihood of a First Merchants' investor actually seeing a notice in the *Investor's Business Daily* "is arguably as great as finding such information by skimming the back pages of the *Wall Street Journal.*" 🚩*Greebel v. FTP Software, Inc.,* 939 F.Supp. 57, 63 (D.Mass.1996).

**\*5** The court therefore concludes that the notice requirements of § 21D have been met in this action and

that the applicable class period for determining lead plaintiff is that which is alleged in the *Jacobs* and *Grubba* actions, i.e., September 23, 1994 to April 16, 1997. In reaching this conclusion, the court is cognizant of the fact that strict adherence to this rule could encourage abuses. Clearly, such a holding would allow parties to wait until only a few days before the initial 60–day period runs to file additional class action complaints that purport to lengthen the class period in an attempt to become the party with the largest financial interest in the litigation. While such concerns are raised in this case, the court is preliminarily satisfied that the *Jacobs and Grubba* complaints have a good-faith basis for extending the class period to September 1994.[8] Should subsequent developments reveal that the pleading of an extended class period was not done in good faith, this court will be able to fashion a sanction that will adequately address the transgression.

[8]  While First Merchants has only admitted that the accounting irregularities affected 1996 and early 1997 stock prices, such admissions on the part of a defendant should not control the length of the class period. The Jacobs/Lax Group has pointed to several facts supporting a class period dating back to September 1994. Specifically, it points to First Merchants' admission that it overstated income by $22 million and intends to write this off in the first quarter of 1997 as a way to "catch up" on uncollectible expenses on old loans, as well as First Merchants' statement that the $22 million will not be included in the Company's 1996 restatement of income. The *Jacobs* complaint relies on these statements to allege that the $22 million is not attributable to either 1996 or 1997 operations. Jacobs compl., ¶¶ 4, 44). Determining whether the complaint is correct in these assertions is for another day.

> In any event, and as the Castillo Group notes, the court should not determine the proper class period under Rule 23 at this stage of the litigation. In fact, the Castillo Group has specifically stated that it is only attacking the Jacobs/Lax Group's class period on the basis of the fact that Jacobs/Lax "has not complied with the [PSLRA] and, therefore, cannot maintain a claim on behalf of a class at this time." (Castillo Group Reply Mem., at 7 n. 8). Because the Jacobs/Lax Group *has* complied with the PSLRA, the bulk of the Castillo Group's

Lax v. First Merchants Acceptance Corp., Not Reported in F.Supp. (1997)

Case 4:24-cv-00673-O    Document 16-7    Filed 09/16/24    Page 8 of 10    PageID 507

objections to the class period for purposes of determining lead plaintiff are mooted.

### 2. Typicality and Adequacy

The Jacobs/Lax Group is presumptively the most adequate plaintiff in this action. Plaintiffs in the Jacobs/Lax Group either filed a complaint and/or made a motion to be lead plaintiff in satisfaction of § 21D(a)(3)(B)(iii)(I)(aa). Those plaintiffs are also the "person or group of persons" that have the largest financial interest among the named plaintiffs in this class action. The PSLRA does not state how the court should determine who has the largest financial interest, but four factors are surely relevant: (1) the number of shares purchased; (2) the number of net shares purchased; (3) the total net funds expended by the plaintiffs during the class period; and (4) the approximate losses suffered by the plaintiffs. (*See* Jacobs/Lax Mem. in Support of Motion, at 12–13) (suggesting factors).

In this case, members of the Jacobs/Lax Group bought 120,820 shares during the class period September 23, 1994 to April 16, 1997. [9] Those same plaintiffs sold 13,150 shares during that period, meaning that they had a net purchase of 107,670 shares, which had a value of $1,908,467. Finally, the Jacobs/Lax plaintiffs allegedly suffered damages of approximately $1,406,376. (*See id.*). [10]

[9]    For the purposes of these motions, the court will accept as true the figures and calculations put forward by the respective parties.

[10]    The Castillo Group alleges that the Jacobs/Lax Group's loss during this period was only $1,382,219. (Castillo Mem. in Opp. to Lax/Jacobs Motion, at 11).

One member of the Jacobs/Lax Group also has suffered the greatest single alleged loss of any of the plaintiffs. Larry A. Davis allegedly has more than $700,000 in damages through a joint trading account with his wife and through his IRA account. Thus, naming the Jacob/Lax Group as lead plaintiff would further the purposes of the PSLRA, which attempted to ensure that sophisticated investors (as measured by the level of investment) would control the course of securities litigation, rather than it being controlled by securities lawyers. *See* ⚑*Greebel v. FTP Software, Inc.,* 939 F.Supp. 57, 63

(D.Mass.1996) ("Congress' purpose was not to ensure notice to the entire class, but merely to those sophisticated investors that Congress deemed presumptively most adequate to serve as lead plaintiffs in securities class actions.").

Members of the Castillo Group purchased some 163,054 shares during the period January 25, 1996 to April 16, 1997. (No figures have been provided for the class period beginning September 23, 1994 .) The Castillo Group has suffered losses of approximately $1,123,214 during the period September 23, 1994 through April 16, 1997. (Castillo Mem. in Opp. to Lax/Jacobs Motion, at 11). [11] Furthermore (according to the Jacobs/Lax Group), the Castillo Group sold nearly 70% of its First Merchant holdings during the class period at prices that were inflated by the alleged fraud, which would presumably diminish their actual losses. (*See* Jacobs/Lax Mem. in Opp. to Abbey Group Motion, at 5). During the same period, the Jacobs/Lax plaintiffs sold only 11% of their shares. (*See id.*). These figures indicate that the Jacobs/Lax Group has the largest financial interest in this litigation, owing to the fact that the plaintiffs that make up the group have suffered the largest alleged losses.

[11]    The Castillo Group allegedly suffered losses of $1,151,672 for the period January 25, 1996 through April 16, 1997. (Castillo Mem. in Opp. to Lax/ Jacobs Motion, at 10).

**\*6** Finally, the Jacobs/Lax Group otherwise satisfies the requirements of Rule 23. Rule 23(a) states that: One or more members of a class may sue or be sued as representative parties on behalf of all only if (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defense of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class. However, as noted by one court, "[a] wide-ranging analysis under Rule 23 is not appropriate and should be left for consideration of a motion for class certification. This inquiry, therefore, focuses on the qualities of the class representatives enumerated in [Rule] 23(a)(3) and 23(a)(4), that is, typicality and adequacy." ⚑*Fischler,* 122 N.C.App. 15, 468 S.E.2d 826, 1996 WL 118429, at * 2.

The court finds that the Jacobs/Lax Group is both typical and adequate under Rule 23(a). All of the claims in these cases arise from plaintiffs' purchases of First Merchants securities

Lax v. First Merchants Acceptance Corp., Not Reported in F.Supp. (1997)

Case 4:24-cv-00673-O    Document 16-7    Filed 09/16/24    Page 9 of 10    PageID 508

during a time in which defendants overstated the Company's income and thereby artificially inflated share prices. While the time period in which these overstatements varies between the two plaintiff groups, the Jacobs/Lax Group meets the typicality requirement because its claims "arise[ ] from the same event or practice or course of conduct that gives rise to the claims of other class members." *DeLaFuente v. Stokely–VanCamp, Inc.,* 713 F.2d 225, 232 (7th Cir.1983) (citation omitted). Nevertheless, if discovery in this case shows that the different class periods do significantly affect the nature of the parties' claims, the court may grant a motion to divide the class into appropriate subclasses. *See Schwartz v. Harp,* 108 F.R.D. 279, 282 (C.D.Cal.1985).

As to adequacy under Rule 23(a) standards, the Jacobs/ Lax Group must simply (1) not have claims that are antagonistic to or that conflict with those of other class members, *Rosario v. Livaditis,* 963 F.2d 1013, 1018 (7th Cir.1992); (2) have sufficient interest in the outcome of the case to ensure vigorous advocacy, *Gammon v. GC Serv. Ltd. Partnership,* 162 F.R.D. 313, 317 (N.D.Ill.1995); and (3) be represented by attorneys who are competent, experienced, qualified, and generally able to conduct the litigation vigorously, id. *See also Halperin v. Nichols, Safina, Lerner & Co.,* No. 94 C 6960, 1996 WL 634037 (N.D.Ill. Oct.29, 1996) (Plunkett, J.) (listing adequacy criteria). In this case, there can be no serious dispute that the interests of the Jacobs/Lax Group are aligned with those of the class, that the Jacobs/Lax Group will prosecute this case with vigor, or that its chosen counsel are competent, experienced, and qualified.

The facts that some plaintiffs in the Jacobs/Lax Group have sued Deloitte & Touche and that they have brought additional claims under the 1933 act and state law does not render the group inadequate to be lead plaintiff. In *In re Donkenny Inc, Securities Litigation,* 171 F.R.D. 156 (S.D.N.Y.1997) (Cedarbaum, J.), the court found that the party that was presumptively the most adequate plaintiff (i.e., Emanon Partners) did not fail to meet the adequacy and typicality requirement merely because it had investments in call and put options in addition to investments in common stock. In *Donkenny,* the other parties moving for lead plaintiff status argued that Emanon Partners' call and put option investments "invited the type of unique defenses disallowed by Rule 23 for class representatives." *Donkenny,* 171 F.R.D. at 158. The court rejected this argument, noting that the bulk of Emanon Partners' claims related to its investments in common

stock and that the other moving parties had not otherwise demonstrated atypicality or unique defenses. *Id.*

**\*7** In this case, there is no dispute that the Jacobs/Lax Group's investments were in the same types of securities as those of the Castillo Group. The only difference in those investments is that some of the Jacobs/Lax investors also purchased First Merchant securities in 1994 and 1995. [12] This does not render these plaintiffs atypical or inadequate. The Castillo Group itself includes complaints with varying class periods. One alleges a class period of less than three months (i.e., *Zucker v. First Merchants Acceptance Corp., et al.,* No. 97 C 2737), while others allege class periods of up to fifteen months. The varying class periods within the Castillo Group (and between the Castillo Group and the Jacobs/Lax Group) can nevertheless be harmonized because all of the complaints are based upon a common set of operative facts.

| 12 | Even several of the members of the Castillo Group purchased First Merchants stock during the class period alleged by the *Jacobs* and *Grubba* complaints. (*See* Gardy Aff., Exh. C (Miller Certification, indicating purchase of shares in November and December 1995) & Exh. D (Ballard Certification, indicating purchase of shares beginning in October 1994)). |
| --- | --- |

The Castillo Group contends that the additional claims asserted by the Jacobs/Lax plaintiffs, namely, those against Deloitte & Touche and those under the 1933 act and under state law, render the Jacobs/Lax plaintiffs atypical and inadequate because it means that they will be subject to unique defenses. This argument is unavailing Section 21D sets up a presumption that the plaintiff with the largest financial interest is the most adequate lead plaintiff. While that presumption may be rebutted by showing that the presumptively most adequate plaintiff is subject to unique defenses, the opposing party must also show that such unique defenses "render such plaintiff incapable of adequately representing the class." 15 U.S.C.A. § 78u–4(a)(3)(B)(iii)(II) (bb). In this case, the Castillo Group has not shown that, in addition to being subject to unique defenses, the Jacobs/Lax plaintiffs will not adequately represent the claims of the entire class.

Also unpersuasive is the Castillo Group's contention that the additional claims asserted by the Jacobs/Lax Group makes it unsuitable to represent the interests of other plaintiffs. On the contrary the fact that the *Castillo* plaintiffs do not assert

claims under the 1933 act, under state law, or against Deloitte & Touche raises the question of whether the Castillo Group can adequately represent the interests of those plaintiffs who do bring such claims.

The court concludes that the Jacob/Lax Group is the most adequate lead plaintiff in this litigation.

### 3. Appointment of Lead Counsel

The PSLRA provides that the "most adequate plaintiff shall, subject to the approval of the court, select and retain counsel to represent the class." 15 U.S.C.A. § 78u–4(a)(3)(B)(iv). The Jacobs/Lax Group has retained the law firms of David B. Kahn & Associates, Ltd. and Milberg Weiss Bershad Hynes & Lerach LLP as co-lead counsel. The court has reviewed the resumes of these firms and has noted their involvement in similar law suits. The court is satisfied that these firms are competent, experienced, and qualified to represent the interests of the plaintiff class. Therefore, the law firms of David B. Kahn & Associates, Ltd. and Milberg Weiss Bershad Hynes & Lerach LLP are appointed as co-lead counsel, provided that there is no duplication of attorneys' services, and the use of co-lead counsel does not in any way increase attorneys' fees and expenses. *See Donkenny,* 171 F.R.D. at 158 (noting that use of co-lead counsel should not result in increased attorneys' fees and expenses).

### C. Edgar Group's Motion

**\*8** A third group of plaintiffs—the "Edgar Group" [13]—has moved to be named lead plaintiff of a separate class of purchasers of First Merchant debt securities. This motion will be denied. Currently, none of the complaints names debt purchasers nor have any of the Edgar Group plaintiffs filed

a complaint on behalf of such purchasers. Furthermore, in its reply brief, the Edgar Group disingenuously noted that its motion was unopposed. This is not surprising, given the fact that the Edgar Group apparently failed to serve its motion on many of the other plaintiffs. For these reasons, the court denies the Edgar Group's motion at this stage of the litigation.

[13]    The Edgar Group consists of James Edgar, Mary Edgar, Emory Sova, Doris Sova, and John Beuker.

WHEREFORE, for the reasons stated above, the Jacobs/Lax Group's motion for appointment as lead plaintiff and for approval of selection of lead counsel is GRANTED. The plaintiffs in *Jacobs, et al. v. First Merchants Acceptance Corp., et al.,* No. 97 C 4236; *Lax v. First Merchants Acceptance Corp., et al.,* No. 97 C 2715; *Katz, et al. v. First Merchants Acceptance Corp., et al.,* No. 97 C 3738; and *Grubba v. First Merchants Acceptance Corp., et al.,* No. 97 C 4237, and class members David Kailbourne and Peter Greenwald are appointed as lead plaintiffs in this matter. The law firms of David B. Kahn & Associates, Ltd. and Milberg Weiss Bershad Hynes & Lerach LLP are appointed co-lead counsel.

The Castillo Group's motion for appointment as lead plaintiff and for approval of selection of lead counsel is DENIED. The Edgar Group's motion for appointment as lead plaintiff and for approval of selection of lead counsel is DENIED. The Jacobs/Lax Group's motion to strike the Edgar Group's lead plaintiff papers is DENIED as moot.

### All Citations

Not Reported in F.Supp., 1997 WL 461036

---

    © 2024 Thomson Reuters. No claim to original U.S. Government Works.

    © 2024 Thomson Reuters. No claim to original U.S. Government Works.